**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GENIUS GROUP LIMITED, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>CITADEL SECURITIES LLC, and VIRTU AMERICAS LLC,<br><br>        Defendants. | Case No. 1:25-cv-09546 (VEC)<br><br>The Honorable Valerie E. Caproni<br><br><br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF GENIUS GROUP LIMITED'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF LEAD COUNSEL**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................................. ii

I.   PRELIMINARY STATEMENT ............................................................................... 1

II.  BACKGROUND ....................................................................................................... 3

III. ARGUMENT ............................................................................................................ 5

    A.   GENIUS' MOTION IS TIMELY ...................................................................... 5

    B.   GENIUS IS THE MOST ADEQUATE PLAINTIFF .......................................... 6

        1.   Genius Has the Largest Financial Interest of Any Movant.................................. 6

        2.   Genius Otherwise Satisfies Rule 23's Requirements............................................. 7

    C.   GENIUS SELECTED WELL-QUALIFIED LEAD COUNSEL TO REPRESENT THE CLASS ............................................................................................. 9

IV. CONCLUSION....................................................................................................... 10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ..................................................................................5

*Francisco v. Abengoa, S.A.*,
   2016 WL 3004664 (S.D.N.Y. May 24, 2016) .......................................................6

*Genius Group Limited v. Citadel Securities LLC, et al.*,
   1:25-cv-09546 (ECF No. 1) ...................................................................................1

*In re Global Crossing, Ltd. Securities Litigation*,
   No. 02-cv-910 (S.D.N.Y.).......................................................................................9

*Harrington Global Opportunity Fund, Limited v. BofA Securities, Inc.*,
   No. 1:21-cv-00761 (S.D.N.Y.).............................................................................10

*Hom v. Vale, S.A.*,
   2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ..........................................................8

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)....................................................................7

*In re Marsh & McLennan Cos. Securities Litigation*,
   MDL No. 1744 (S.D.N.Y.) .....................................................................................9

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ...........................................................................7

*In re Nortel Networks Corp. Sec. Litig.*,
   No. 01-CV-1855(RMB), 2002 WL 1492116 (S.D.N.Y. Feb. 4, 2002) ...................9

*Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC*,
   No. 1:22-cv-10185 (S.D.N.Y.).............................................................................10

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
   2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017).......................................................6

*In re Oxford Health Plans, Inc., Securities Litigation*,
   MDL No. 1222 (S.D.N.Y.) .....................................................................................9

*In re Pfizer Inc. Securities Litigation*,
   No. 1:04-cv-9866 (S.D.N.Y.).................................................................................9

*In re Refco, Inc., Securities Litigation*,
   No. 05-cv-8626 (S.D.N.Y.)..............................................................................9

*Snyder v. Bauzun Inc.*,
   2020 WL 5439763 (S.D.N.Y. Sept. 8, 2020)...................................................6

*Taser International, Inc., et al. v. Morgan Stanley & Co., Inc.*,
   1:10-cv-03108 (N.D. Ga.).............................................................................10

*In re Tyco International Ltd. Securities Litigation*,
   No. 02-cv-1335 (D.N.H.)..............................................................................9

**Statutes**

15 U.S.C. § 78j(b) ...........................................................................................1

15 U.S.C. § 78i .................................................................................................1

15 U.S.C. § 78u-4(a)(3)(A)(i)(II).....................................................................5

15 U.S.C. § 78u-4(a)(3)(B) .......................................................................*passim*

15 U.S.C. § 78u-4(a)(3)(B)(i) ....................................................................2, 5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii) ......................................................................6, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ..............................................................2, 5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).............................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).........................................................9

**Other Authorities**

17 C.F.R. § 229.404 .........................................................................................1

17 C.F.R. § 240.10b-5 .....................................................................................1

Fed. R. Civ P. 23 ......................................................................................*passim*

Fed. R Civ. P. 23(a)(4)...................................................................................8

Genius Group Limited ("Genius" or the "Company") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), for an order (i) appointing Genius as Lead Plaintiff in the above-captioned securities class action (the "Action"); (ii) approving Genius' selection of Grant & Eisenhofer P.A. ("G&E"), Kasowitz LLP ("Kasowitz"), and Christian Attar ("CA," and, collectively "co-Lead Counsel") as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

## I.     PRELIMINARY STATEMENT

This Action asserts claims under Sections 9 and 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78i, and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants Citadel Securities LLC ("Citadel") and Virtu Americas LLC ("Virtu"). ¶¶ 89-105.[1] Genius asserts these claims on behalf of itself and all other similarly situated persons who sold securities of Genius between April 12, 2022 and May 30, 2025, inclusive (the "Class Period"), and were damaged thereby (the "Class").[2] ¶¶ 82-83. The Action arises from Defendants' years-long manipulative and illegal trading of Genius securities. ¶¶28-56. Throughout the Class Period, Defendants repeatedly, and on a massive scale, placed and executed manipulative trades that were designed to, and did, artificially deflate the price of Genius stock – an illegal trading practice known as "spoofing." *Id*. Specifically, Defendants submitted and then immediately canceled

---

[1] Unless otherwise specified, citations to "¶ __" or the "Complaint" are to the Class Action Complaint for Violations of the Federal Securities Laws filed in the action styled *Genius Group Limited v. Citadel Securities LLC, et al.*, 1:25-cv-09546 (ECF No. 1).

[2] Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Defendants, members of Defendants' Board, and members of their immediate families (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; (iv) any entity in which Defendants have or had a controlling interest; and (v) any affiliate of Defendants.

thousands of orders to trade Genius common stock without any genuine intent to execute those trades. ¶39; Ex.2. These "baiting" order served no legitimate economic purpose. Instead, they were designed to, and did, artificially depress the market price of Genius stock by misleading market participants into believing that there was excess supply and/or volatility with respect to the Company's securities. ¶¶33-66. Defendants profited massively from their spoofing scheme, but Class members, who traded at prices artificially depressed by Defendants' manipulative conduct, were left holding the bag. *See, e.g.*, ¶¶42-55.

The PSLRA provides that the "most adequate plaintiff" shall serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA, the most adequate plaintiff is the movant with the "largest financial interest" in the relief sought by the Class in this litigation and that also makes a *prima facie* showing that it is a typical and adequate Class representative under Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, Genius is the "most adequate plaintiff," including because it has the "largest financial interest" in this litigation of any movant. During the Class Period, Genius sold nearly ***219 million*** shares of Genius stock (including nearly 44 million shares Genius sold through-at-the-market offerings), for proceeds of more than ***$140 million***, at prices artificially depressed by Defendants' trading in violation of the federal securities laws. Alexander Decl. Ex. B[3]

In addition to asserting the largest financial interest, Genius readily satisfies the relevant requirements of Rule 23 because its claims are typical of those of all members of the Class and it will fairly and adequately represent the interests of the Class. Genius is the issuer of the subject securities and not only possesses a real financial interest in the litigation, it is deeply committed to

---

[3] Genius' PSLRA-mandated Certification is attached as Exhibit 1 to the Complaint, and, for the Court's convenience, is filed herewith as Exhibit A to the Alexander Decl. In addition, a chart identifying the volume and price of Genius' stock transactions during the Class Period, including net sales, is filed herewith as Exhibit B to the Alexander Decl.

protecting its shareholders and the integrity of its publicly traded securities.  Indeed, as discussed below, the Action is the product of Genius' diligent and thorough investigation into the facts alleged in the Complaint.  Moreover, as publicly traded company, Genius has experience in supervising the work of outside counsel, including in connection with securities litigation.  Genius fully understands a lead plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake those responsibilities to guarantee the vigorous prosecution of this action.  *See* Alexander Decl. Ex. B.  Moreover, Genius benefits from the resources of a dedicated staff, including in-house counsel, that ensures close oversight of the litigation and outside counsel. As Lead Plaintiff in this action, Genius will bring those resources and experiences to bear on behalf of the Class. Accordingly, Genius has both the incentive and ability to supervise and monitor counsel.

Genius has also demonstrated its adequacy through its selection of G&E, Kasowitz, and CA as co-Lead Counsel for the Class.  As discussed below, G&E and Kasowitz are nationally recognized for their skill and experience in complex securities class action litigation, while CA has significant experience prosecuting claims involving "spoofing."  Accordingly, co-Lead Counsel are eminently qualified to prosecute the Action.

Based on Genius' significant financial interest in this litigation and its ability to oversee counsel, Genius respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

## II.    BACKGROUND

Genius provides AI-powered business education and development tools as well as management consultancy services to entrepreneurs and business owners. ¶15. Genius also owns and operates resorts, retreats, and co-working cafes that offer resources supporting entrepreneurship and business development located across Europe, the Middle East, Africa, North

Asia, the Asia Pacific, Australia, North America and South America. *Id.* Genius securities have been publicly traded on the NYSE since April 2022 under the ticker "GNS." ¶ 16.  Defendants are Delaware limited liability companies registered with the SEC as broker-dealers. Defendants place and execute trades for their own accounts as well as for their customers. Collectively, Defendants were responsible for 65%-85% of all over-the-counter trading of Genius securities throughout the Class Period. ¶¶9-10.

As alleged in the Complaint, during the Class Period, Defendants placed ***at least*** 1,395,792 manipulative and deceptive "spoofing" orders to buy and sell Genius stock –totaling ***at least*** 139,579,200 shares – that artificially depressed the price of that stock, enriching Defendants at the Class' expense.  ¶39; Ex.2. Specifically, acting either for their own account or executing customer trades, Defendants inundated exchange Limit Order Books with a large volume of Baiting Orders and then cancelled those Baiting Orders from the Limit Order Books within milliseconds after achieving the desired directional price movement.  ¶¶33-56.  Defendants orchestrated these "spoofing episodes" nearly every trading during the Class Period, sometimes placing ***thousands*** of Baiting Orders in the market on a given day. ¶39; Ex.2.

Defendants' continuous placement and cancellation of thousands of fictitious Baiting Orders served no legitimate market function. Instead, Defendants' trading was intended to transmit false and misleading price signals designed, among other things, to "trick" or "bait" other market participants into placing their own sell orders.  ¶¶33-66.  Through this scheme, Defendants perpetrated a fraud on the market and created a "pile-on" effect that depressed the price of Genius' shares over time. *Id*.  This manipulation benefitted Defendants in multiple ways, including (1) enhancing the value of their pre-existing short positions, allowing Defendants to cover those significant positions at advantageous prices; (2) facilitating what a Virtu senior officer called the

"Three Tick Boogie," whereby Defendants absorbed and resold customer order flow at prices that were favorable to Defendants, but unfavorable to their customers (fraudulent conduct for which the SEC fined Citadel in 2017). *See, e.g.*, ¶¶42-55. Meanwhile, Class members were forced to transact in Genius stock at prices artificially depressed by Defendants' misconduct, including Genius, which, as discussed, sold nearly 60 million shares during the Class Period through at-the-market offerings. ¶¶67-79.

## III.    ARGUMENT

The Court should appoint Genius Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA governs the lead plaintiff selection process in class actions arising under the federal securities laws. Under the PSLRA, the "most adequate plaintiff" is presumed to be the movant with the "largest financial interest in the relief sought by the class" who can make a *prima facie* showing of the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("The [PSLRA] provides a simple . . . process for identifying the lead plaintiff pursuant to these criteria."). As set forth below, Genius respectfully submits that it is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

### A.    GENIUS' MOTION IS TIMELY

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. See 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On November 14, 2025, Genius filed the Complaint initiating the Action. On November 17, 2025, G&E, as counsel for Genius, published a notice on Business Wire alerting investors to the pendency of the Action, and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is January 16, 2025. *See*

Alexander Decl. Ex. C. As such, Genius' motion for appointment as Lead Plaintiff is timely. *Snyder v. Bauzun Inc.*, 2020 WL 5439763, at *3 (S.D.N.Y. Sept. 8, 2020).

    **B.**    **GENIUS IS THE MOST ADEQUATE PLAINTIFF**

Genius should be appointed Lead Plaintiff because it is the "most adequate plaintiff" to represent the Class. 15 U.S.C. § 78u-4(a)(3)(B)(i). Pursuant to the PSLRA, there is a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" with the "largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Nurlybaev v. ZTO Express (Cayman) Inc.*, 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017). Genius has the largest financial interest of any qualified movant. In addition, Genius satisfies Rule 23's typicality and adequacy requirements, and possesses the necessary competency, diligence, and resources to effectively oversee and litigate this action on behalf of the Class.

    **1.**    **Genius Has the Largest Financial Interest of Any Movant**

Genius is the movant with the "largest financial interest in the relief sought by the class" and, accordingly, should be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Under the PSLRA, the size of a movant's financial stake in the litigation is by far the most significant factor in determining whether it is "most adequate." In determining a movant's financial stake, courts in this Circuit look to the volume of shares traded during the Class Period and "the net funds expended during the class period." *See, e.g., Francisco v. Abengoa, S.A.*, 2016 WL 3004664, at *4-5 (S.D.N.Y. May 24, 2016). These factors are a particularly appropriate proxy for determining a movant's financial stake in the Action because, given the character of the alleged harm caused by Defendants' misconduct, a Class member's damages will depend significantly on the volume of that Class member's stock sales during the Class Period. Here, Genius sold or otherwise

6

disposed of 218,769,621 shares during the Class Period, for proceeds of $141,184,897.23. This includes 43,804,769 shares Genius sold through at-the-market-offerings for proceeds of $37,791,694.80. *See* Alexander Decl. Ex. B. To the best of Genius' knowledge, there is no other movant seeking Lead Plaintiff appointment that has a larger interest in this litigation. Accordingly, Genius has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is presumptively the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 2.    Genius Otherwise Satisfies Rule 23's Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, Genius otherwise satisfies the requirements of Rule 23. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only make "preliminary showing of typicality and adequacy" pursuant to Rule 23. *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) (internal citation omitted). As detailed below, Genius satisfies these requirements.

Genius' claims are typical of the claims of the other sellers of Genius common stock comprising the Class. Typicality "does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015). Here, Genius' claims and the claims of all other Class members arise from the same course of conduct and all turn on the same "disputed issues of law or fact" – principally, whether Defendants engaged in the trading scheme alleged in the Complaint, whether that scheme violated the federal securities law, and whether Defendants' conduct artificially depressed the price of Genius stock during the Class Period. Like all Class members, Genius (1) sold the Company's stock during the Class

Period; (2) at prices artificially deflated by Defendants' spoofing scheme; and (3) was damaged thereby. As such, Genius is a typical Class representative.

Genius similarly satisfies Rule 23's adequacy requirement. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether a movant is adequate, courts consider whether "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Hom v. Vale, S.A.*, 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016) (citation omitted). Genius easily satisfies this test because its substantial financial stake in the litigation provides the incentive to vigorously represent the Class's claims. Genius' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Genius and other Class members. Quite the opposite. Genius has a strong interest in protecting its shareholders and the integrity of its publicly traded securities from abusive trading that devalues those securities and impedes its ability to raise capital.

Further, Genius understands its obligation under the PSLRA to oversee and supervise the litigation separate and apart from counsel. As a publicly traded company with a sophisticated executive leadership, corporate board, and in-house counsel, Genius is well-situated to meet its obligations.

Finally, Genius has also demonstrated its adequacy through its substantial efforts to investigate the wrongdoing alleged in the Complaint. As part of that investigation, and as discussed further below, Genius retained highly-qualified counsel to represent the Class, as well

as sophisticated experts that assisted in identifying, characterizing, and quantifying, Defendants'
misconduct.

Accordingly, Genius has made the requisite *prima facie* showing that it satisfies the
relevant Rule 23 requirements.

### C.    GENIUS SELECTED WELL-QUALIFIED LEAD COUNSEL TO REPRESENT THE CLASS

Pursuant to the PSLRA, a movant shall, subject to Court approval, select and retain counsel
to represent the class it seeks to represent, and the court should not disturb that selection unless it
is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also
In re Nortel Networks Corp. Sec. Litig.*, No. 01-CV-1855(RMB), 2002 WL 1492116, at *1
(S.D.N.Y. Feb. 4, 2002) ("The Court should not disturb the lead plaintiff's choice of class counsel
unless 'necessary to protect the interests of the class.'") (citation omitted).

G&E is among the preeminent securities class action law firms in the country.  G&E has
served as lead or co-lead counsel in several of the largest securities class actions in history,
including: *In re Tyco International Ltd. Securities Litigation*, No. 02-cv-1335 (D.N.H.) ($3.2
billion recovery); *In re Pfizer Inc. Securities Litigation*, No. 1:04-cv-9866 (S.D.N.Y.) ($486
million recovery); *In re Global Crossing, Ltd. Securities Litigation*, No. 02-cv-910 (S.D.N.Y.)
($448 million recovery); *In re Refco, Inc., Securities Litigation*, No. 05-cv-8626 (S.D.N.Y.) ($367
million recovery); *In re Marsh & McLennan Cos. Securities Litigation*, MDL No. 1744
(S.D.N.Y.) ($400 million recovery); and *In re Oxford Health Plans, Inc., Securities Litigation*,
MDL No. 1222 (S.D.N.Y.) ($300 million recovery). *See* Alexander Decl. Ex. D (G&E Firm
Resume).

Kasowitz is one of the leading litigation law firms in the country and extensive experience
litigating complex securities class and "spoofing" actions.  Kasowitz's attorneys—who are ranked

9

by publications such as Chambers USA—have recovered billions for investors.  *See* Alexander Decl. Ex. E (Kasowitz Firm Resume).

CA is one of Texas' premier litigation boutiques and has significant experience litigating cases involving manipulative and deceptive market activity, including "spoofing."  As just a few examples, CA has served, or is serving, as lead or co-lead counsel in the following market manipulation cases:  *Harrington Global Opportunity Fund, Limited v. BofA Securities, Inc.*, No. 1:21-cv-00761 (S.D.N.Y.); *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 1:22-cv-10185 (S.D.N.Y.); and *Taser International, Inc., et al. v. Morgan Stanley & Co., Inc.*, 1:10-cv-03108 (N.D. Ga.).  *See* Alexander Decl. Ex. F (CA Firm Resume).

Thus, the Court may be assured that by granting this Motion, the Class will receive the legal representation of the highest caliber.

**IV.    CONCLUSION**

For the foregoing reasons, Genius respectfully requests that this Court appoint it as Lead Plaintiff; approve its selection of G&E, Kasowitz, and CA as Lead Counsel for the Class; and grant any such further relief as the Court may deem just and proper.

Dated: New York, New York      Respectfully submitted,
January 16, 2026

                               /s/ *Abe Alexander*
                               Abe Alexander
                               Timothy Clark B. Dauz
                               **GRANT & EISENHOFER P.A.**
                               485 Lexington Avenue
                               New York, NY 10017
                               Telephone.: (646) 722-8500
                               Facsimile: (646) 722-8501
                               aalexander@gelaw.com
                               tdauz@gelaw.com

Stephen W. Tountas
**KASOWITZ LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
stountas@kasowitz.com

James W. Christian
**CHRISTIAN ATTAR**
1177 W. Loop South, Suite 1700
Houston, TX 77027
Telephone: (713) 659-7617
Facsimile: (713) 659-4641
jchristian@christianattarlaw.com

*Counsel for Genius Group Limited and Proposed Lead Counsel for the Class*

11

## **CERTIFICATE OF WORD COUNT**

The undersigned counsel of Genies Group Limited certifies that this brief contains 3,006 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on January 16, 2026.

*/s/ Abe Alexander*
Abe Alexander

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 16, 2026, I caused the foregoing to be filed electronically with the Court's Case Management / Electronic Case filing System ("CM/ECF"). Notice of the filing was sent to all parties of record by operation of the Notice of Electronic Filing System, and the parties to this action may access the filings through CM/ECF.

*/s/ Abe Alexander*
Abe Alexander