# EXHIBIT 7




BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY • GAVIN NEWSOM, GOVERNOR
**DEPARTMENT OF CONSUMER AFFAIRS • BUREAU FOR PRIVATE POSTSECONDARY EDUCATION**
1747 North Market, Suite 225, Sacramento, CA 95834
P (916) 574-8900   |   Toll-Free (888) 370-7589   |   www.bppe.ca.gov

# NOTICE AND EMERGENCY DECISION

**VIA EMAIL AND OVERNIGHT DELIVERY**

February 29, 2024

TO:     University of Antelope Valley
        44055 North Sierra Highway
        Lancaster, CA 93534

Pursuant to California Education Code section 94938, California Code of Regulations, Title 5, section 75150, and article 13 (commencing with section 11460.10) of Chapter 4.5 of Part 1 of Division 3 of Title 2 of the Government Code, the Bureau for Private Postsecondary Education (Bureau) issues the following Emergency Decision:

The Bureau hereby orders the University of Antelope Valley to:

1. **CEASE ENROLLMENT OF ANY NEW STUDENTS IN ALL INSTITUTIONAL PROGRAMS**
2. **CEASE ALL INSTRUCTION IN ALL INSTITUTIONAL PROGRAMS**
3. **CEASE THE COLLECTION OF TUTION AND FEES FOR ALL INSTITUTIONAL PROGRAMS**
4. **CEASE OPERATION OF ALL DEGREE PROGRAMS**

**This order is effective upon close of business March 8, 2024:**

This order is based on an immediate danger to the public health, safety, and welfare as set forth below and in the attached Declaration of Bureau Investigator Matthew Wiggins.

1. **The institution is not financially sound.**
    a. University of Antelope Valley's (UAV or Institution) accreditor, WASC Senior College and University Commission (WSCUC), placed UAV on probation because it found UAV had serious issues of noncompliance with WSCUC Standards related to financial stability.
    b. UAV is involved in Unlawful Detainer litigation on its properties for non-payment of rent. Roger Hamilton (UAV and Genius Group CEO) stated he expected a summary judgment in the matter on or about February 26, 2024, which will result in UAV's eviction from the properties. On February 23, 2024, UAV entered into an Unlawful Detainer Stipulated Judgment stipulating UAV shall vacate their premises by February 29, 2024 for the properties located at 44055, 44059, 44073 Sierra Hwy,

      Lancaster, CA 93536, and by March 4, 2024 for the property located at 45000 Valley Central Way, Lancaster, CA 93536.
  c. UAV's Audited Financial Statements for the year ended December 31, 2022, failed to demonstrate the minimum composite score required by 5 CCR section 71745.
  d. UAV failed to pay its employees their full salary on time. UAV paid the employees the outstanding wage balances one week after the scheduled pay date.
  e. UAV failed to provide students with Title IV credit balance refunds. UAV had 396 students with credit balance refunds owed; 375 students had not received a credit balance refund within 14 days.
  f. The U.S. Department of Education (ED) placed UAV on Heightened Cash Monitoring 2 (HCM2), effective December 11, 2023, due to the Institution's failure to meet the standards of financial responsibility.
  g. UAV paid staff 25% of their wages by check and the remaining 75% of their wages by Genius Group shares with the ability to convert into cash within three business days.
  h. UAV told ED that all credit balances for students were reviewed, and checks were prepared for students and/or parents, if applicable. However, the checks were not issued to students because of lack of funding.
  i. The California Student Aid Commission (CSAC) informed the Bureau that it placed UAV in the At-Risk Program; placed UAV on "Halt Pay" so UAV is no longer eligible for the Cal Grant program; and informed UAV it is required to return liabilities in the amount of $65,083.00 to the Cal Grant program to satisfy the condition of the Institution's Program Compliant Review.
  j. UAV failed to provide Financial Statements as part of its Annual Report submissions for the years 2018, 2019, and 2020 in violation of California Code Regulations, Title 5 (5 CCR), section 74110(b).

2. **Insufficient administration.**
  a. WSCUC placed UAV on probation because it found UAV had serious issues of noncompliance with WSCUC Standards in areas related to administration.
  b. ED placed UAV on Heightened Cash Monitoring 2 due to its failure to meet the standards of administrative capability.
  c. UAV required staff to sign nondisclosure agreements (NDA) in a violation of subdivisions (m) and (t) of CEC section 94897.
  d. UAV paid staff 25% of their wages by check and the remaining 75% of their wages by Genius Group shares with the ability to convert into cash within three business days. Large numbers of staff have resigned in recent months such that UAV does not have the administrative personnel to operate its educational programs.
  e. Multiple members of UAV's administrative staff resigned such that UAV does not have the administrative personnel to continuing operation of its programs.

    f. UAV failed to notify the Bureau of the additional oversight imposed by ED and CSAC in violation of CEC section 94934.5.

3. **Insufficient facilities.**
    a. UAV is involved in Unlawful Detainer litigation on its properties and has agreed to vacate the properties by February 29, 2024.
    b. UAV's facilities are in such disrepair, UAV sought to vacate the campuses prior to February 26, 2024 as part of a plan to dismiss the summary judgment in the Unlawful Detainer litigation.
    c. UAV described a plan to transition all of its degree program students to fully online programs without obtaining requisite student consent. UAV has not provided a plan to continue on-ground certificate programs. The Institution's plan to change those students' method of instructional delivery and suspend instruction in certificate programs would cause potential student harm. It is a violation of CEC section 94898(c) and may be grounds for default of the enrollment agreement pursuant to CEC section 94927.

These circumstances require immediate action by the Bureau to protect students, prevent misrepresentations to the public, and prevent the loss of public funds or monies paid by students.

UAV has the right to be heard before the Director of the Department of Consumer Affairs, or her designee, regarding the allegations in the Emergency Decision prior to the effective date of the Emergency Decision.

If you would like to be heard before the Director, or her designee, pursuant to Government Code section 11460.60 and 5 CCR section 75100, please submit a request by email to Renee.Walters@dca.ca.gov or by telephoning Renee Walters at (916) 574-7433. Unless the Bureau receives your request by 5:00 p.m. on March 4, 2024, you will be deemed to have waived your right to be heard before the Director, or her designee.

If requested, the hearing before the Director of the Department of Consumer Affairs, or her designee, will be held on March 6, 2024, at 2:00pm via online video conferencing.

The Emergency Decision shall remain in effect until such time as the Accusation has been fully adjudicated or upon issuance of the final decision following judicial review. If a hearing before the Director is timely requested, this order shall not take effect until the conclusion of the hearing and upon issuance of a written decision. Upon issuance of the Emergency Decision, you have the right under Government Code section 11460.80 to obtain judicial review of the Emergency Decision.

Within 10 days after issuance of the Emergency Decision, the Bureau will file an Accusation on the charges and allegations set forth in the Emergency Decision. If the Institution files a Notice of Defense in response to the Accusation, the Bureau will hold a formal adjudicative hearing on the Accusation within 30 days of its receipt of the Notice of Defense.

"Original Signature on File"                                              2/29/2024
_____          _____
Deborah Cochrane, Bureau Chief                                  Date
Bureau for Private Postsecondary Education



BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY • GAVIN NEWSOM, GOVERNOR
**DEPARTMENT OF CONSUMER AFFAIRS • BUREAU FOR PRIVATE POSTSECONDARY EDUCATION**
1747 North Market, Suite 225
Sacramento, CA 95834
P (916) 431-6959   |   Toll-Free (888) 370-7589   |   www.bppe.ca.gov



## DECLARATION OF MATTHEW WIGGINS

I, MATTHEW WIGGINS, hereby declare as follows:

1. I am a competent person over the age of eighteen years and make this declaration based upon my personal knowledge. If called as a witness at trial or hearing, I could and would competently testify to each of the matters set forth herein.

2. I have been a Special Investigator for the Bureau for Private Postsecondary Education (Bureau) within the California Department of Consumer Affairs for over one year.

3. My duties include investigation of institutions approved by the Bureau, including but not limited to reviewing documents, interviewing witnesses, and writing investigative reports.

4. The Bureau has discretion to make an emergency decision to protect the public. California Education Code, section 94938 states, in part:

> (a) If the bureau determines that it needs to make an emergency decision to protect students, prevent misrepresentation to the public, or prevent the loss of public funds or moneys paid by students, it may do so pursuant to Article 13 (commencing with Section 11460.10) of Chapter 4.5 of Part 1 of Division 3 of Title 2 of the Government Code.

California Code of Regulations, Title 5, section 75150, states, in part:

> (a) The Bureau may make an emergency decision for temporary, interim relief pursuant to Article 13 (commencing with section 11460.10) of Chapter 4.5 of Part 1 of Division 3 of Title 2 of the Government Code.

(b) The Bureau may make an emergency decision pursuant to subdivision (a) where there is an immediate danger to the public health, safety, or welfare that requires immediate action to protect students, prevent misrepresentations to the public, or prevent the loss of public funds or monies paid by students, including but not limited to fraud; a substantial misrepresentation in the institution's Performance Fact Sheet, school catalog, or enrollment agreement; a substantial failure to meet institutional minimum operating standards; failure to meet statutory and regulatory requirements for accreditation; or a substantial failure to obtain a necessary approval or permit from another agency or regulatory body, affecting public health, safety or welfare.

(c) The Bureau may order temporary, interim relief in the form of some or all of the following measures:

>    (1) cease or limit enrollment of new students;
>    (2) cease part or all instruction for some or all programs;
>    (3) cease collection of tuition or fees for some or all programs.
>    (4) suspend approval or provisional approval to operate or offer any degree programs.

5. California statutes and regulations require private postsecondary educational institutions, such as the University of Antelope Valley (UAV), be approved by the Bureau. UAV is currently approved by the Bureau to offer approximately thirty-five (35) programs, including thirteen (13) degree programs.

6. As a result of my investigation and based on the facts stated herein, I believe there is an immediate danger to the public health, safety, or welfare that requires immediate action to protect students, prevent misrepresentations to the public, and prevent the loss of monies paid by students. I believe an emergency decision prohibiting enrollment of any new students in all institutional programs, instruction in all institutional programs, the collection of tuition and fees for all institutional programs, and the operations of all degree programs is necessary.

7. The institution is not financially sound.
    a. On or about August 22, 2023, WASC Senior College and University Commission (WSCUC) placed UAV on probation because it found UAV had serious issues of noncompliance with WSCUC Standards in the following areas related to financial stability. *(Exhibit 1 is a true and correct copy of the August 22, 2023 letter from WSCUC.)*
        - UAV lacked financial strength, leadership, and sustainability demonstrated by the Institution's operating expenses exceeding total revenues for at least the past two years, reliance on substantial infusions of cash from the parent entity to meet financial obligations, the parent entity is facing financial problems as reported in their annual report to the Security Exchanges Commission for the fiscal year ended December 31, 2022. WSCUC cited the United States Department of Education's (ED) review of the UAV Title IV program which resulted in 20 findings of noncompliance. These findings constitute ongoing violations of California Education Code (CEC) section 94919(a) and 5 CCR section 71745.
        - UAV reported optimistic near-term enrollment projections but provided no evidence that these projections are reasonable or that UAV can overcome the steady decline in enrollment it has been experiencing since 2018.

    b. On November 27, 2023, the Bureau received a complaint alleging UAV is involved in Unlawful Detainer litigation for the properties located at 44055, 44059, and 44073 Sierra Highway, Lancaster, CA 93534 and 45000 Valley Central Way, Lancaster, CA 93534. This further demonstrates UAV's inability to pay its operating expenses. *(Exhibits 2, 3, and 4 are true and correct copies of the complaint and unlawful detainer summons.)* Further, on February 16, 2024, in a conference call with ED, the Bureau, and WSCUC, Roger Hamilton (UAV and Genius Group CEO) stated he expected a summary judgment in the matter on or about February 26, 2024, which will result in UAV's eviction from the properties. On February 23, 2024, UAV entered into an Unlawful Detaining Stipulated Judgment stipulating UAV shall vacate their premises by February 29, 2024 for the properties located at 44055, 44059, 44073 Sierra Hwy, Lancaster, CA 93536, and by March 4, 2024 for the property located at 45000 Valley Central Way, Lancaster, CA 93536. *(Exhibits 22a and 22b.)* This is further evidence of an ongoing violation of 5 CCR section 71745.

    c. On December 5, 2023, UAV provided the Bureau its Audited Financial Statements for the year ended December 31, 2022, which failed to demonstrate the minimum composite score required by 5 CCR section 71745. *(Exhibit 5 is a true and correct copy of the Audited Financial Statements.)*

    d. On December 11, 2023, ED relayed information from UAV's Executive Director of Financial Aid indicating UAV changed the pay schedule from October 2023 through December 2023 for full time salaried employees. The change resulted in the employees

3

    not receiving their full pay on time; UAV paid the employees the outstanding wage balances one week after the scheduled pay date. On December 12, 2023, I corroborated this information with UAV Executive Director of Financial Aid Kevin Hoover (Hoover), UAV Interim Chief Financial Officer/Director of Accounting Cecilia Pineda (Pineda), and UAV Interim Chief Academic Officer Kristal Andersen (Andersen) during an investigative site visit. This is further evidence of an ongoing violation of 5 CCR section 71745.

e. On December 11, 2023, ED relayed to the Bureau information from UAV's Executive Director of Financial Aid indicating UAV failed to provide students with Title IV credit balance refunds. On December 12, 2023, I corroborated this information with Hoover, Pineda, Andersen, and Bursar Carlos Martinez (Martinez) during an investigative site visit. Martinez stated the institution's policy required credit balance refund payments to students within 14 days.

    On December 13, 2023, UAV provided a spreadsheet of all students with outstanding credit balances owed. *(Exhibit 6 is a true and correct copy of the credit balance spreadsheet-redacted.)* A review of this document showed UAV had 396 students with credit balance refunds owed; 375 students had not received a credit balance refund within 14 days to document compliance with 34 Code of Federal Regulations (CFR) Section 668.164(h) pursuant to CEC Section 94919. This is further evidence of an ongoing violation of 5 CCR section 71745.

f. On December 13, 2023, ED notified the Bureau that ED placed UAV on Heightened Cash Monitoring 2 (HCM2)[1], effective December 11, 2023, due to the Institution's failure to

---

[1] The U.S. Department of Education (ED) may place institutions on a Heightened Cash Monitoring (HCM) payment method to provide additional oversight of cash management. Heightened Cash Monitoring is a step that FSA can take with institutions to provide additional oversight for a number of financial or federal compliance issues, some of which may be serious and others that may be less troublesome.
There are two levels of Heightened Cash Monitoring:
- Heightened Cash Monitoring 1 (HCM1): After a school makes disbursements to eligible students from institutional funds and submits disbursement records to the Common Origination and Disbursement (COD) System, it draws down FSA funds to cover those disbursements in the same way as a school on the Advance Payment Method.
- Heightened Cash Monitoring 2 (HCM2): A school placed on HCM2 no longer receives funds under the Advance Payment Method. After a school on HCM2 makes disbursements to students from its own institutional funds, a Reimbursement Payment Request must be submitted for those funds to the Department.

Schools may be placed on HCM1 or HCM2 as a result of compliance issues including but not limited to accreditation issues, late or missing annual financial statements and/or audits, outstanding liabilities, denial of re-certifications, concern around the school's administrative capabilities, concern around a school's financial responsibility, and possibly severe findings uncovered during a program review. Additionally, ED may place a school on the "Reimbursement" payment method if it determines that the school needs the highest level of monitoring. The "Reimbursement" payment method is similar to HCM2, except ED reviews the documentation for all students and parents included in the payment request, not just a sample. Some schools are on this list due to

    meet the standards of financial responsibility. *(Exhibit 7 is a true and correct copy of the December 12, 2023 letter.)* This is further evidence of an ongoing violation of 5 CCR section 71745.

g. On February 16, 2024, in a conference call with ED, the Bureau, and WSCUC, Roger Hamilton (UAV and Genius Group CEO) stated UAV paid staff 25% of their wages by check and the remaining 75% of their wages by Genius Group shares with the ability to convert into cash within three business days. On February 16, 2024, the Bureau obtained corroborating statements from the following current and former UAV staff members which support an ongoing violation of 5 CCR section 71745.
   - Dr. Kristal Andersen *(Exhibit 8 is a true and correct copy of the corroborating email.)*
   - Carmela Geronga *(Exhibits 9 and 9a are true and correct copies of the corroborating emails.)*
   - Joi Christy *(Exhibit 10 is a true and correct copy of the corroborating email.)*

h. On February 16, 2024, the Bureau received an email from then UAV Bursar Carlos Martinez stated the following. *(Exhibit 11 is a true and correct copy of the February 16, 2024 email.)*

> ". . . we did recently let our state accreditors and the DOE know that we gave over 100,000 dollars in refunds to students.
>
> "The day I received the checks (Friday 2/9) I was told to not let the students pick them up until Monday. I called the students then on Monday after I gave a few out, I was told to not give any out.
>
> "However, I still gave these checks out.
>
> "This morning, the acting CFO, Cecilia asked me to give her the checks.
>
> "Now the checks are with her and I don't know if the students will ever get them.
>
> "UAV could not make payroll and we have to all leave the building next week. There is no way the students will get that money.

---

preliminary findings made during a program review that is still open. Those findings could change when the program review is completed.

5

"I need to know what I need to do, because I feel like this is wrong and if it is something illegal I don't want to participate in it as part of my job *[sic]*"

On February 21, 2024, Martinez provided documentation showing acting CFO Cecilia Pineda requested him to return the checks to her on February 16, 2024. *(Exhibits 12 and 12a are true and correct copies of the documentation.)* The documentation shows Pineda stated, "I hope you have not given any out as instructed *[sic]* The money has not come in therefore they cannot be released *[sic]*" This is further evidence of an ongoing violation of 5 CCR section 71745 and CEC section 94897(j).

i. On February 16, 2024, the Bureau received UAV's Program Review Response to ED dated February 9, 2024. *(Exhibit 19 is a true and correct copy of UAV's Program Review Report Response.)* UAV stated in their response, "All credit balances for students were reviewed, and checks were prepared for students and/or parents, if applicable. There were some delays in reissuing stale-dated checks; UAV will be able to provide documentation as subsequent checks are cashed or deposited."

On February 21, 2024, Martinez provided documentation showing acting CFO Cecilia Pineda requested him to return the checks to her on February 16, 2024. *(Exhibits 12 and 12a.)* The documentation shows Pineda stated, "I hope you have not given any out as instructed *[sic]* The money has not come in therefore they cannot be released *[sic]*"

UAV made misleading statements when it informed ED it prepared checks for all students with credit balances in their February 9, 2024 response. On February 12, 2024, Pineda directed Martinez not to provide those checks to students. On February 16, 2024, Pineda took possession of the dated checks from Martinez to prevent the distribution of credit balance checks to students.

On February 26, 2024, Carmela Geronga, former Associate Director of Financial Aid, corroborated Martinez's statements by email. *(Exhibit 20 is a true and correct copy of this email.)*

This is further evidence of an ongoing violation of 5 CCR section 71745 and CEC section 94897(j).

j. On February 21, 2024, the California Student Aid Commission (CSAC) informed the Bureau of the following actions.
   - On January 23, 2024, CSAC placed UAV in the At-Risk Program as a result the CSAC's Program Compliance Review of UAV. *(Exhibit 13 is a true and correct copy of the January 13, 2024 letter.)*

6

- On February 13, 2024, CSAC placed UAV on "Halt Pay." UAV is no longer eligible for the Cal Grant program. UAV will remain on "Halt Pay" until the institution addresses and documents compliance with all state and federal laws and regulations, and CSAC policies. *(Exhibit 14 is a true and correct copy of the February 13, 2024 letter.)*
        - On February 20, 2024, CSAC informed UAV the institution is required to return liabilities in the amount of $65,083.00 to the Cal Grant program to satisfy the condition of the institution's Program Compliant Review. *(Exhibit 15 is a true and correct copy of the February 20, 2024 letter.)*
    k. The University of Antelope Valley (UAV or Institution) failed to provide Financial Statements as part of its Annual Report submissions for the years 2018, 2019, and 2020 in violation of California Code Regulations, Title 5 (5 CCR), section 74110(b).

8. Insufficient Administration.
    a. On September 18, 2023, the Bureau obtained the probation notice dated on August 22, 2023 from WSCUC website (Exhibit 1). WSCUC placed UAV on probation because it found UAV had serious issues of noncompliance with WSCUC Standards in the following areas related to administration:
        - UAV operated without a CFO since Fall 2022.
        - Senior leadership and the board of UAV experienced significant disruption, turnover, and ongoing unfilled positions including chief financial officer, board chair, and board vice chair. UAV failed to provide evidence that it has the leadership, organizational structures, and decision-making processes that can sustain institutional capacity and educational effectiveness.
        - UAV provided data showing graduation rates of students enrolled in associates and bachelors programs declined in recent years. Integrated Postsecondary Education Data System (IPEDS) data available through the WSCUC Key Indicators Dashboard indicate that first-year student retention rates are declining, median student debt is increasing, and undergraduate earnings (greater than a high school graduate) are far below both WSCUC and national averages.
        - UAV experienced multiple resignations and extended vacancies in board membership, audits of financial aid operations by the ED and CSAC, and severe budgetary challenges. UAV did not promptly inform the Commission of these matters, which could materially affect its accreditation status.

    b. In a letter dated December 12, 2023, ED placed UAV on Heightened Cash Monitoring 2, effective December 11, 2023, due to the institution's failure to meet the standards of administrative capability. *(Exhibit 7.)*

7

c. On February 6, 2024, the Bureau received notification from UAV staff members that its parent company, Genius Group, required them to sign nondisclosure agreements (NDA). The staff members are Admissions Administrative Assistant Judy Sanchez, Financial Aid Officer Diana Macias, and Admissions Counselor Alexis Taube. *(Exhibits 16, 17, 17a are true and correct copies of the documents related to the NDA.)* The NDA requires the employee to provide Genius Group at least 10 days prior notice before disclosing confidential information, including financial, personnel, and business matters to agencies of government to enable Genius Group to oppose the disclosure or seek other protections in court. Sanchez stated the employees felt personally attacked and retaliated against. This NDA is a violation of subdivisions (m) and (t) of CEC section 94897.

d. On February 16, 2024, in a conference call with ED, the Bureau, and WSCUC, Roger Hamilton (UAV and Genius Group CEO) stated UAV paid staff 25% of their wages by check and the remaining 75% of their wages by Genius Group shares with the ability to convert into cash within three business days. On February 16, 2024, the Bureau obtained corroborating statements from the following current and former UAV staff members which support an ongoing violation of 5 CCR section 71745.
   - Dr. Kristal Andersen *(Exhibit 8.)*
   - Carmela Geronga *(Exhibits 9 and 9a.)*
   - Joi Christy *(Exhibit 10.)*

e. Through the course of its investigation, the Bureau received notification from multiple members from UAV's administrative staff informing it of their resignations. On February 22, 2024, UAV provided me a list of the staff members terminated or resigned since December 12, 2023. *(Exhibit 18 is a true and correct copy of the list of separations.)* The list includes the following administrative staff and faculty.
   - Pauline Christian – Financial Aid Representative/SEVIS Representative, resignation date unknown.
   - Kevin Hoover – Executive Director of Financial Aid, resigned without notice on January 16, 2024.
   - Judith Sanchez – Administrative Assistant/Admissions staff, resigned with two days' notice on February 9, 2024.
   - Carmela Geronga – Associate Director of Financial Aid, resigned without notice on February 16, 2024.
   - Carlos Martinez – Bursar, resigned without notice on February 20, 2024.
   - Lorena Coffin - Adjunct Professor, resigned without notice on February 21, 2024.
   - Eleazar Cardona – Adjunct Instructor, resigned on February 16, 2024, effective March 3, 2024.
   - Maria Ramires – Adjunct Instructor, resigned without notice on February 22, 2024.

8

- Ahila Muthaiya – Vocational Nursing Program Director, resigned without notice on February 22, 2024.

Due to the resignations, the Institution does not have the administrative personnel who have the expertise to ensure the achievement of the Institution's mission and objectives and the operation of its educational programs. This is evidence of an ongoing violation of 5 CCR section 71730.

f. As of February 22, 2023, the Bureau has not received notice from UAV for the additional oversight imposed on UAV by the following oversight entities. This is an ongoing violation of CEC Section 94934.5.
- ED placed UAV on HCMII on December 11, 2023.
- CSAC placed UAV in the At-Risk Program on January 23, 2024.

9. Insufficient facilities.
   a. On November 27, 2023, the Bureau received a complaint alleging UAV is involved in Unlawful Detainer litigation for the properties located at 44055, 44059, and 44073 Sierra Highway, Lancaster, CA 93534 and 45000 Valley Central Way, Lancaster, CA 93534. This further demonstrates UAV's inability to pay its operating expenses. *(Exhibits 2, 3, and 4.)* Further, on February 16, 2024, in a conference call with ED, the Bureau, and WSCUC, Roger Hamilton (UAV and Genius Group[2] CEO) stated he expected a summary judgment in the matter on or about February 26, 2024, which will result in UAV's eviction from the properties.

   On February 23, 2024, UAV Interim President/CEO Timothy Campagna (Campagna) stated in a telephone call that UAV had an agreement in principle with the landlords' attorney to extend the vacate order to February 29, 2024. On February 26, 2024, Campagna confirmed the extension by email. *(Exhibit 21 is a true and correct copy this email.)*

   On February 26, 2024, Campagna emailed the Bureau notice the institution agreed to a stipulated judgment on February 23, 2024. *(Exhibit 22 is a true and correct copy of this email.)* The Stipulated Judgment for the Sierra Campus, located at 44055, 44059, and 44073 Sierra Highway, Lancaster, CA 93534, states UAV will vacate the premises no later than 5:00 PM on February 29, 2024. *(Exhibit 22a is a true and correct copy of this stipulated judgement.)* The Stipulated Judgment for the Pioneer Event Center, located at 45000 Valley Central Way, Lancaster, CA 93534, states UAV will vacate the premises no

---

[2] University of Antelope Valley, Inc is owned by Genius Group Limited. Roger Hamilton is the Chief Executive Officer of both UAV, Inc and Genius Group Limited.

later than 5:00 PM on March 4, 2024. *(Exhibit 22b is a true and correct copy of this stipulated judgment.)*

b. On February 16, 2024, in a conference call with ED, the Bureau, and WSCUC, Roger Hamilton (UAV and Genius Group CEO) stated UAV's facilities are in such disrepair, UAV sought to vacate the campuses prior to February 26, 2024 as part of a plan to dismiss the stipulated judgment in the Unlawful Detainer litigation.

On February 23, 2024, Campagna emailed the Bureau with the UAV's WSCUC Substantive Change: Relocation of Main Campus Proposal Submission February 2024. *(Exhibits 23 is a true and correct copy of the relocation proposal.)* The document states that during an emergency Board Meeting on February 15, 2024, UAV's Board of Trustees approved the evacuation of the campus.

Hamilton's statement of the disrepair of the campus and UAV's plan to evacuate their campus shows the institution failed to maintain well-maintained facilities and campus environs in accordance with 5 CCR Section 71735.

Also on the February 16, 2024 conference call, Hamilton and Campagna described a plan to transition all of its degree program students to fully online programs without requisite student consent. UAV stated, "At this time, there does not appear to be any issues in the assessment or institutional effectiveness of the degree-seeking students. Their courses can continue uninterrupted either via teams/zoom instruction temporarily or online." *(Exhibit 23.)* The Institution's plan to change those students' method of instructional delivery and suspend instruction in certificate programs would cause potential student harm.

On February 23, 2024, UAV provided the Bureau with 20 enrollment agreements executed by students. A review of the documents provided showed 12 currently enrolled students who signed enrollment agreements for "on ground" degree programs with no hybrid or distance education elements. The Institution's plan to change those students' method of instructional delivery would cause potential student harm. It is a violation of CEC section 94898(c) and may be grounds for default of the enrollment agreement pursuant to CEC section 94927.

On the February 16, 2024 conference call, Hamilton and Campagna stated UAV is working to relocate within the community to continue the programs not offered by distance education.

On February 21, 2023, UAV provided an updated roster of students enrolled. A review of the document identified 175 students currently enrolled in on ground certificate programs.

UAV has not provided a concrete plan to continue on-ground certificate programs. UAV states, "Once the location relocates, certificate and on-site classes will resume as normal. There will be no disruption to online students." *(Exhibit 23.)* This implies the Institution plans to suspend operation of the on ground certificate programs until the Institution relocates. The suspension of on ground certificate programs would harm the 175 students currently enrolled as of February 21, 2024.

Campagna stated the Institution identified four potential sites for relocation. The Institution would have class and lab space for the on ground certificate programs once the Institution signs leases. *(Exhibit 22.)* This further shows the Institution will suspend operation of the on ground certificate programs until the Institution relocates. The suspension of on ground certificate programs would harm the 175 students currently enrolled as of February 21, 2024.

As of March 1, 2024, the institution will not have sufficient facilities and necessary equipment to support the achievement of the educational objectives of all of the courses and educational programs in which students are enrolled, as required by Title 5, CCR Section 71735(a). Additionally, unscheduled suspension of class is a violation of CEC Section 94898(b)(1).

10. I recommended that the Bureau take disciplinary action against UAV to prevent the institution from causing further or future student harm. This recommendation is based on my determination of multiple violations of the California statutes and regulations.

I declare under penalty of perjury under the laws of the State of California that the above statements are true and correct of my personal knowledge.

Executed this 28th day of February 2024, at Sacramento, California.

"Original Signature on File"

_____

Matthew Wiggins
Special Investigator

11