# EXHIBIT 10

**BEFORE THE DIRECTOR**
**DEPARTMENT OF CONSUMER AFFAIRS**
**BUREAU FOR PRIVATE POSTSECONDARY EDUCATION**
**STATE OF CALIFORNIA**

In the Matter of the Accusation Against:

**UNIVERSITY OF ANTELOPE VALLEY**

Main Location

44055 North Sierra Highway

Lancaster, CA 93534

Institution Code: 1936081

BPPE Case No.: BPPE23-0677

Respondent.

**DECISION AND ORDER**

The attached Stipulated Surrender of Approval to Operate an Accredited Institution and

Order is hereby accepted and adopted by the Director of the Department of Consumer Affairs

as the Decision in the above-entitled matter.

This Decision shall become effective on _____June 18_____, 2024.

It is so ORDERED ____June 14_____, 2024.

"Original Signature on File"
_____
RYAN MARCROFT
Deputy Director, Legal Affairs Division
Department of Consumer Affairs

1  ROB BONTA
   Attorney General of California
2  THOMAS L. RINALDI
   Supervising Deputy Attorney General
3  HEATHER VO
   Deputy Attorney General
4  State Bar No. 223418
   300 So. Spring Street, Suite 1702
5  Los Angeles, CA 90013
    Telephone: (213) 269-6317
6    Facsimile: (916) 731-2126
   *Attorneys for Complainant*

7

8                          **BEFORE THE**
                **DEPARTMENT OF CONSUMER AFFAIRS**
9      **FOR THE BUREAU FOR PRIVATE POSTSECONDARY EDUCATION**
                     **STATE OF CALIFORNIA**
10

11  In the Matter of the Accusation Against**:**     Case No. BPPE23-0677

12  **UNIVERSITY OF ANTELOPE VALLEY**

13  Main Location                              **STIPULATED SURRENDER OF**
14  44055 North Sierra Highway                 **APPROVAL TO OPERATE AN**
    Lancaster, CA 93534                        **ACCREDITED INSTITUTION AND**
15                                             **ORDER**
    Institution Code Number: 1936081
16
                                  Respondent.
17

18

19      IT IS HEREBY STIPULATED AND AGREED by and between the parties to the above-

20  entitled proceedings that the following matters are true:

21                          **PARTIES**

22      1.    Deborah Cochrane (Complainant) is the Chief of the Bureau for Private

23  Postsecondary Education (Bureau). She brought this action solely in her official capacity and is

24  represented in this matter by Rob Bonta, Attorney General of the State of California, by Heather

25  Vo, Deputy Attorney General.

26      2.    University of Antelope Valley is owned by University of Antelope Valley, Inc.

27  University of Antelope Valley Inc., is owned by Genius Group Limited. Roger Hamilton is the

28  Chief Executive Officer of both University of Antelope Valley, Inc. and Genius Group Limited.

                                  1

Unless otherwise stated, University of Antelope Valley is "Respondent," and University of Antelope Valley, Inc., Genius Group Limited, and Roger Hamilton collectively are referenced in this Stipulated Surrender of Approval to Operate an Accredited Institution and Order as "Respondent Owners." Respondent and Respondent Owners are represented in this proceeding by attorney Julie W. O'Dell, Esq., whose address is: 19800 MacArthur Blvd., Suite 300, Irvine, California 92612.

3.    On or about November 24, 1997, the Bureau issued a Full Approval to Operate to Respondent.  On June 22, 2010, the Bureau issued an Approval to Operate an Accredited Institution[1] Code Number 1936081 to Respondent.  The Approval to Operate an Accredited Institution was in full force and effect at all times relevant to the charges brought herein and will expire on February 1, 2028, unless renewed.

## JURISDICTION

4.    Accusation case number BPPE23-0677 was filed before the Director of the Department of Consumer Affairs (Director), and is currently pending against Respondent.  The Accusation and all other statutorily required documents were properly served on Respondent on March 7, 2024.  Respondent timely filed its Notice of Defense contesting the Accusation.  A copy of Accusation case number BPPE23-0677 is attached as Exhibit A and incorporated by reference.

## ADVISEMENT AND WAIVERS

5.    Respondent has carefully read, fully discussed with counsel, and understands the charges and allegations in Accusation case number BPPE23-0677.  Respondent also has carefully read, fully discussed with counsel, and understands the effects of this Stipulated Surrender of Approval to Operate an Accredited Institution and Order.

6.    Respondent is fully aware of its legal rights in this matter, including the right to a hearing on the charges and allegations in the Accusation; the right to confront and cross-examine the witnesses against it; the right to present evidence and to testify on its own behalf; the right to the issuance of subpoenas to compel the attendance of witnesses and the production of

---

[1] Obtaining approval by means of accreditation requires that the institution's owner has accreditation through an accredited agency recognized by the United States Department of Education.

documents; the right to reconsideration and court review of an adverse decision; and all other rights accorded by the California Administrative Procedure Act and other applicable laws.

7.    Respondent voluntarily, knowingly, and intelligently waives and gives up each and every right set forth above.

## CULPABILITY OF UNIVERSITY OF ANTELOPE VALLEY

8.    Respondent agrees that cause may exist for discipline and hereby voluntarily surrenders its Approval to Operate an Accredited Institution Code Number 1936081 for the Bureau's formal acceptance.

9.    Furthermore, Respondent understands and agrees that the charges and allegations in Accusation Case No. BPPE23-0677, if presented at a hearing, may constitute cause for imposing discipline and hereby voluntarily surrenders its Approval to Operate an Accredited Institution Code Number 1936081 for the Bureau's formal acceptance.  For the purpose of resolving the Accusation without the expense and uncertainty of further proceedings, Respondent agrees that, at a hearing, Complainant might be able to establish a factual basis for the charges in the Accusation, and that Respondent hereby gives up its right to contest those charges.

10.    Respondent understands that by signing this stipulation it enables the Director to issue the order accepting the surrender of its Approval to Operate an Accredited Institution Code Number 1936081 without further process.

## CONTINGENCY

11.    This stipulation shall be subject to approval by the Director or the Director's designee. Respondent understands and agrees that counsel for Complainant and the staff of the Bureau for Private Postsecondary Education may communicate directly with the Director and staff regarding this stipulation and surrender, without notice to or participation by Respondent or its counsel.  By signing the stipulation, Respondent understands and agrees that it may not withdraw the agreement or seek to rescind the stipulation prior to the time the Director considers and acts upon it.  If the Director fails to adopt this stipulation as the Decision and Order, the Stipulated Surrender of Approval to Operate an Accredited Institution and Order shall be of no force or

effect, except for this paragraph, it shall be inadmissible in any legal action between the parties, and the Director shall not be disqualified from further action by having considered this matter.

12.    The parties understand and agree that Portable Document Format (PDF) and facsimile copies of this Stipulated Surrender of Approval to Operate an Accredited Institution and Order, including PDF and facsimile signatures thereto, shall have the same force and effect as the originals.

13.    This Stipulated Surrender of Approval to Operate an Accredited Institution and Order is intended by the parties to be an integrated writing representing the complete, final, and exclusive embodiment of their agreement.  It supersedes any and all prior or contemporaneous agreements, understandings, discussions, negotiations, and commitments (written or oral).  This Stipulated Surrender of Approval to Operate an Accredited Institution and Order may not be altered, amended, modified, supplemented, or otherwise changed except by a writing executed by an authorized representative of each of the parties.

14.    In consideration of the foregoing stipulations, the parties agree that the Director may, without further notice or formal proceeding, issue and enter the following Order:

## <u>ORDER</u>

IT IS HEREBY STIPULATED AND AGREED by and between the parties to the above entitled proceedings that the Approval to Operate an Accredited Institution Code No. 1936081 issued to Respondent, is surrendered and accepted by the Director.

1.    The surrender of Respondent's Approval to Operate an Accredited Institution and the acceptance of this surrender by the Director (Stipulation) shall constitute the imposition of discipline against Respondent. This Stipulation constitutes a record of the discipline and shall become a part of Respondent's license history with the Bureau.

2.    Respondent shall lose all rights and privileges as a Bureau approved private postsecondary educational institution in California as of the effective date of the order.

3.    **Cost Recovery.**  Respondent Owners shall pay the Bureau its costs of investigation and enforcement in the amount of $28,654.31 within forty-five (45) days of the effective date of

4

the order. Should Respondent ever apply for approval to operate in the future, such approval to operate shall not be issued unless this amount is paid in full.

4. **Financial Report.** Within forty-five (45) days of the effective date of the order, Respondent shall provide to the Bureau a comprehensive financial report detailing payments made by or on behalf of each currently enrolled student. This breakdown should include cash payments, third-party payments, private loans, scholarships, financial aid, and any other source of funding. Also, within forty-five (45) days of the effective date of the order, Respondent shall provide a complete report of all credit balances owed to students. The report shall include the student's full name, enrollment date, and status (i.e., active, graduated, withdrawn, leave of absence, etc.).

5. **Contact Information.** Within forty-five (45) days of the effective date of the order, Respondent shall update its institutional contact information, including its Agent for Service of Process, Custodian of Records, general contact person, and institution physical and mailing address.

6. **Student Roster and Enrollment Agreements.** Within forty-five (45) days of the effective date of the order, Respondent shall provide to the Bureau a student roster containing the student's full name, mailing address, program, and payment information for students who attended University of Antelope Valley within the last 120 days prior to February 29, 2024. Further, Respondent shall provide the signed and executed enrollment agreement for each student listed on the student roster.

7. **Student Records**. Within forty-five (45) days of the effective date of the order, Respondent shall provide the location where all student records are maintained. Respondent shall ensure student access to those records and shall not charge any fee to obtain an unofficial or official student record. Respondent shall at its own expense digitize all student records.

8. **Student Refunds:**

a. Respondent shall process and Respondent Owners shall fund a total refund of all institutional charges of defaulted enrollment agreements directly to all eligible University of Antelope Valley students who were enrolled at University of Antelope Valley on or after

5

November 1, 2023 through February 29, 2024, the date of University of Antelope Valley's

closure, exclusive of students who at the time of default were able to complete their program

either at the University of Antelope Valley or at another institution at no additional charge to the

student beyond the amount of total charges in the original enrollment agreement.  Those refunds

shall include: (i) cash payments made by a student to University of Antelope Valley; (ii)

payments made to University of Antelope Valley for the benefit of a student by a third party; (iii)

private student loan payments made by a lender to University of Antelope Valley pursuant to a

loan taken by a student; (iv) cash scholarship payments made to University of Antelope Valley by

a third-party for a particular student; (v) and any other cash payment made by or for the benefit of

a student, excluding federal or state loans and grants.

       b.      Respondent shall mail the refunds to students at their addresses of record no

later than six (6) months after execution of the Stipulation. Respondent shall email all eligible

students and place a notice on its website advising students of refund timing and directing

students to notify University of Antelope Valley of their current mailing address.

       c.      Respondent shall set up a post office box for return delivery.

       d.      Respondent Owners shall retain an independent monitor who has no prior

relationship with Respondent and subject to Bureau approval, that will attest to the Bureau that

Respondent: 1) appropriately calculated the refunds to eligible students; 2) prepared refund

checks for each student containing the proper amount of refund; and 3) mailed those refund

checks to students on or before the applicable deadline. The independent monitor will also control

the University of Antelope Valley post-office box, hold any returned checks, and report to Bureau

within 60 days of mailing any refund checks returned to University of Antelope Valley.

       e.      Respondent shall cancel any returned checks and issue payment to the Bureau

for the amount of the returned checks within 30 days of the independent monitor's report.

    9.    **Payments.**  Respondent Owners shall be a party to this Stipulation, and shall be a

signatory to this Stipulation. Respondent Owner Genius Group Limited shall make all payments

required in this Stipulation on behalf of Respondent Owners.

10.   **Attorney's Fees.**  If either any party brings any action in any forum to enforce this Stipulation or any of its terms, the prevailing party shall be entitled to reasonable attorney's fees incurred in connection with such action.

11.   **New Application**.  If Respondent or Respondent Owners ever file an application for an Approval to Operate in the State of California, the Bureau shall treat it as a new application for Approval to Operate.  Respondent or Respondent Owners understand that if they should ever reapply for a new Approval to Operate with the Bureau, all the charges contained in Accusation No. BPPE23-067 shall be deemed as causes for imposing discipline and for the purpose of any Statement of Issues or any other proceeding seeking to deny or restrict licensure.

12.   **Compliance**.  Respondent must comply with all the laws, regulations and procedures for licensure in effect at the time the application is filed, and all of the charges and allegations contained in Accusation case number BPPE23-0677 shall be deemed to be true, correct and admitted by Respondent when the Bureau determines whether to grant or deny the application. If Respondent fails to comply with any part of this Stipulated Surrender of Approval to Operate an Accredited Institution and Order, the Bureau shall deny the application.

<u>**ACCEPTANCE**</u>

I have carefully read the above Stipulated Surrender of Approval to Operate an Accredited Institution and Order and have fully discussed it with my attorney, Julie W. O'Dell, Esq.  I understand the stipulation and the effect it will have on my Approval to Operate an Accredited Institution.  I enter into this Stipulated Surrender of Approval to Operate an Accredited Institution and Order voluntarily, knowingly, and intelligently, and agree to be bound by the Decision and Order of the Director of the Department of Consumer Affairs.

DATED: _____      *Signature Page Attached* _____

**UNIVERSITY OF ANTELOPE VALLEY**
*Respondent*

7

1    10.   **Attorney's Fees.**  If either any party brings any action in any forum to enforce this

2 Stipulation or any of its terms, the prevailing party shall be entitled to reasonable attorney's fees

3 incurred in connection with such action.

4    11.   **New Application**.  If Respondent or Respondent Owners ever file an application for

5 an Approval to Operate in the State of California, the Bureau shall treat it as a new application for

6 Approval to Operate.  Respondent or Respondent Owners understand that if they should ever

7 reapply for a new Approval to Operate with the Bureau, all the charges contained in Accusation

8 No. BPPE23-067 shall be deemed as causes for imposing discipline and for the purpose of any

9 Statement of Issues or any other proceeding seeking to deny or restrict licensure.

10    12.   **Compliance**.  Respondent must comply with all the laws, regulations and procedures

11 for licensure in effect at the time the application is filed, and all of the charges and allegations

12 contained in Accusation case number BPPE23-0677 shall be deemed to be true, correct and

13 admitted by Respondent when the Bureau determines whether to grant or deny the application. If

14 Respondent fails to comply with any part of this Stipulated Surrender of Approval to Operate an

15 Accredited Institution and Order, the Bureau shall deny the application.

16                                    <u>**ACCEPTANCE**</u>

17    I have carefully read the above Stipulated Surrender of Approval to Operate an Accredited

18 Institution and Order and have fully discussed it with my attorney, Julie W. O'Dell, Esq.  I

19 understand the stipulation and the effect it will have on my Approval to Operate an Accredited

20 Institution.  I enter into this Stipulated Surrender of Approval to Operate an Accredited Institution

21 and Order voluntarily, knowingly, and intelligently, and agree to be bound by the Decision and

22 Order of the Director of the Department of Consumer Affairs.

23

24    DATED:   ___June 4, 2024___          *Timothy Campagna*
                                          DocuSigned by:
                                          A1596EE0F2CC46B...

25                                        **UNIVERSITY OF ANTELOPE VALLEY**
                                          *Respondent*     Timothy Campagna

26

27

28

1  DATED: _____  June 4, 2024

2  UNIVERSITY OF ANTELOPE VALLEY, INC.
3  GENIUS GROUP LIMITED
   ROGER HAMILTON, CEO
4  *Respondent Owners*

5

6      I have read and fully discussed with Respondent and Respondent Owners the terms and

7  conditions and other matters contained in this Stipulated Surrender of Approval to Operate an

8  Accredited Institution and Order.  I approve its form and content.

9

10  DATED: _____  June 4, 2024

11  JULIE W. O'DELL, Esq.
    *Attorney for Respondent and*
12  *Respondent Owners*

13

14                      **ENDORSEMENT**

15      The foregoing Stipulated Surrender of Approval to Operate an Accredited Institution and

16  Order is hereby respectfully submitted for consideration by the Director of the Department of

17  Consumer Affairs.

18

19  DATED: _____  June 5, 2024          Respectfully submitted,

20                                                 ROB BONTA
                                                   Attorney General of California
21                                                 THOMAS L. RINALDI
                                                   Supervising Deputy Attorney General
22

23

24                                                 HEATHER VO
                                                   Deputy Attorney General
25                                                 *Attorneys for Complainant*

26

27  LA2024600912
    66640545_8.docx
28

                                8

Stipulated Surrender of Approval to Operate an Accredited Institution and Order (Case No. BPPE23-0677)

**Exhibit A**

**Accusation Case No. BPPE23-0677**

ROB BONTA
Attorney General of California
THOMAS L. RINALDI
Supervising Deputy Attorney General
HEATHER VO
Deputy Attorney General
State Bar No. 223418
300 So. Spring Street, Suite 1702
Los Angeles, CA 90013
 Telephone: (213) 269-6317
 Facsimile: (916) 731-2126
*Attorneys for Complainant*

BEFORE THE
DEPARTMENT OF CONSUMER AFFAIRS
FOR THE BUREAU FOR PRIVATE POSTSECONDARY EDUCATION
STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Accusation Against**:** | Case No. BPPE23-0677 |
| **UNIVERSITY OF ANTELOPE VALLEY** | |
| <u>Main Location</u><br>44055 North Sierra Highway<br>Lancaster, CA 93534 | **ACCUSATION** |
| Institution Code Number: 1936081 | |
| Respondent. | |

**PARTIES**

1.    Deborah Cochrane (Complainant) brings this Accusation solely in her official

capacity as the Chief of the Bureau for Private Postsecondary Education, Department of

Consumer Affairs.

2.    On or about November 24, 1997, the Bureau for Private Postsecondary Education

("Bureau") issued an Approval to Operate an Accredited Institution[1] Code Number 1936081 to

University of Antelope Valley, Inc. The Approval to Operate an Accredited Institution was in

full force and effect at all times relevant to the charges brought herein and will expire on

---

   [1] Obtaining approval by means of accreditation requires that the institution's owner has
accreditation through an accredited agency recognized by the United States Department of
Education.

1  February 1, 2028, unless renewed.  University of Antelope Valley is owned by University of

2  Antelope Valley, Inc.  University of Antelope Valley Inc., is owned by Genius Group Limited.

3  Roger Hamilton is the Chief Executive Officer of both University of Antelope Valley, Inc. and

4  Genius Group Limited. Unless otherwise stated, University of Antelope Valley, University of

5  Antelope Valley Inc., Genius Group Limited, and Roger Hamilton collectively are referenced in

6  this Accusation as "Respondent."

7  **JURISDICTION**

8      3.    This Accusation is brought before the Director of the Department of Consumer

9  Affairs ("Director") for the Bureau, under the authority of the following laws.  All section

10  references are to the Education Code unless otherwise indicated.

11      4.    Section 118, subdivision (b) of the Business and Professions Code provides that the

12  suspension, expiration, surrender, cancellation of a license shall not deprive the Director of

13  jurisdiction to proceed with a disciplinary action during the period within which the license may

14  be renewed, restored, reissued or reinstated.

15      5.    Section 94933 of the Code states:

16  "The bureau shall provide an institution with the opportunity to remedy noncompliance,

17  impose fines, place the institution on probation, or suspend or revoke the institution's approval to

18  operate, in accordance with this article, as it deems appropriate based on the severity of an

19  institution's violations of this chapter, and the harm caused to students."

20      6.    Section 94937 of the Code states, in pertinent part:

21  "(a) As a consequence of an investigation, which may incorporate any materials obtained or

22  produced in connection with a compliance inspection, and upon a finding that an institution has

23  committed a violation, the bureau may place an institution on probation or may suspend or revoke

24  an institution's approval to operate for:

25  (1) Obtaining an approval to operate by fraud.

26  (2) A material violation or repeated violations of this chapter or regulations adopted

27  pursuant to this chapter that have resulted, or may result, in harm to students. For purposes of this

28  paragraph, "material violation" includes, but is not limited to, misrepresentation, fraud in the

2

inducement of a contract, and false or misleading claims or advertising, upon which a student reasonably relied in executing an enrollment agreement and that resulted, or may result, in harm to the student.

. . . .

(c) The bureau may seek reimbursement pursuant to Section 125.3 of the Business and Professions Code.

(d) An institution shall not be required to pay the cost of investigation to more than one agency."

7.    California Code of Regulations, title 5, section 75100:

"(a) The Bureau may suspend, revoke or place on probation with terms and conditions an approval to operate.

"(b) 'Material violation' as used in section 94937 of the Code includes committing any act that would be grounds for denial under section 480 of the Business and Professions Code.

"(c) The proceedings under this section shall be conducted in accordance with Article 10 (commencing with Section 11445.10) of Chapter 4.5 or Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, as requested by the institution."

8.    California Code of Regulations, title 5, section 75150 states, in pertinent part:

. . . .

"(d) To the extent practicable and to the extent that prior notice will not increase the likelihood of immediate danger to the public health, safety, or welfare, the Bureau shall, not less than 48-hours prior to the effective date of the emergency decision, give notice of an emergency decision to a person listed in section 71130(a) or 71135. Such notice may be given personally, by telephone, email, fax, or mail, and shall inform the person of the emergency decision and its effective date; the manner in which the person may request an opportunity to be heard before the Director, or his or her designee, prior to the effective date of the emergency decision; the right to judicial review of the decision; and the process by which the decision may be resolved pursuant to section 75100(c) and section 11460.60 of the Government Code."

. . . .

3

9.    Section 11460.50 of the Government Code states:

"(a) The agency shall issue an emergency decision, including a brief explanation of the factual and legal basis and reasons for the emergency decision, to justify the determination of an immediate danger and the agency's emergency decision to take the specific action.

"(b) The agency shall give notice to the extent practicable to the person to which the agency action is directed. The emergency decision is effective when issued or as provided in the decision."

**STATUTORY PROVISIONS**

10.    Section 94885 of the Code states, in pertinent part:

"(a) The bureau shall adopt by regulation minimum operating standards for an institution that shall reasonably ensure that all of the following occur:

(1) The content of each educational program can achieve its stated objective.

(2) The institution maintains specific written standards for student admissions for each educational program and those standards are related to the particular educational program.

(3) The facilities, instructional equipment, and materials are sufficient to enable students to achieve the educational program's goals.

(4) The institution maintains a withdrawal policy and provides refunds.

(5) The directors, administrators, and faculty are properly qualified.

(6) The institution is financially sound and capable of fulfilling its commitments to students.

(7) That, upon satisfactory completion of an educational program, the institution gives students a document signifying the degree or diploma awarded.

(8) Adequate records and standard transcripts are maintained and are available to students.

(9) The institution is maintained and operated in compliance with this chapter and all other applicable ordinances and laws."

. . . .

11.    Section 94893 of the Code states:

"If an institution intends to make a substantive change to its approval to operate, the institution shall receive prior authorization from the bureau. Except as provided in subdivision (a) of Section 94896, if the institution makes the substantive change without prior bureau authorization, the institution's approval to operate may be suspended or revoked."

4

12.    Section 94894 of the Code states, in pertinent part:

"The following changes to an approval to operate are considered substantive changes and require prior authorization:

. . . .

"(g) A significant change in the method of instructional delivery."

. . . .

13.    Section 94897 of the Code states, in pertinent part:

"An institution shall not do any of the following:

. . . .

"(j) In any manner make an untrue or misleading change in, or untrue or misleading statement related to, a test score, grade or record of grades, attendance record, record indicating student completion, placement, employment, salaries, or financial information, including any of the following:

. . . .

"(2) Information or records relating to the student's eligibility for student financial aid at the institution.

"(3) Any other record or document required by this chapter or by the bureau."

. . . .

"(m) Direct any individual to perform an act that violates this chapter, to refrain from reporting unlawful conduct to the bureau or another government agency, or to engage in any unfair act to persuade a student not to complain to the bureau or another government agency.

. . . .

"(t) Require a prospective, current, or former student or employee to sign a nondisclosure agreement pertaining to their relationship to, or experience with, the institution, except that an institution may use a nondisclosure agreement to protect the institution's intellectual property and trade secrets. Any nondisclosure agreement in violation of this section is void and not enforceable at law or in equity.

. . .

5

1    "(u) Fail to maintain policies related to compliance with this chapter or adhere to the

2    institution's stated policies."

3    . . . .

4    14.    Section 94898 of the Code states, in pertinent part:

5    . . . .

6    "(c) If an institution enrolls a student in an educational program that is conducted at a

7    specific site at the time of enrollment, the institution shall not convert the educational program to

8    another method of delivery, such as by means of distance education. This subdivision does not

9    apply to an educational program that also includes a distance education component, if the student

10    is notified during the enrollment process, in writing, that the program contains a distance

11    education component."

12    . . . .

13    15.    Section 94900.5 of the Code states, in pertinent part:

14    . . . .

15    "(c) Any other records required to be maintained by this chapter, including, but not limited

16    to, records maintained pursuant to Article 16 (commencing with Section 94928)."

17    . . . .

18    16.    Section 94919 of the Code states, in pertinent part:

19    "(a) An institution that participates in the federal student financial aid programs complies

20    with this article by complying with applicable regulations of the federal student financial aid

21    programs under Title IV of the federal Higher Education Act of 1965."

22    . . . .

23    17.    Section 94929 of the Code states, in pertinent part:

24    "(a) An institution shall annually report to the bureau, as part of the annual report, and

25    publish in its School Performance Fact Sheet, the completion rate for each program. Except as

26    provided in subdivision (b), the completion rate shall be calculated by dividing the number of on-

27    time graduates by the number of students available for graduation."

28    . . . .

6

18.    Section 94934 of the Code states, in pertinent part:

"(a) As part of the compliance program, an institution shall submit an annual report to the bureau, under penalty of perjury, signed by a responsible corporate officer, by July 1 of each year, or another date designated by the bureau, and it shall include the following information for educational programs offered in the reporting period:

(1) The total number of students enrolled by level of degree or for a diploma.
(2) The number of degrees, by level, and diplomas awarded.
(3) The degree levels and diplomas offered.
(4) The School Performance Fact Sheet, as required pursuant to Section 94910.
(5) The school catalog, as required pursuant to Section 94909.
(6) The total charges for each educational program by period of attendance.
(7) A statement indicating whether the institution is, or is not, current in remitting Student Tuition Recovery Fund assessments.
(8) A statement indicating whether an accrediting agency has taken any final disciplinary action against the institution.
(9) Additional information deemed by the bureau to be reasonably required to ascertain compliance with this chapter."

. . . .

19.    Section 94934.5 of the Code states, in pertinent part:

"(a) An institution with an approval to operate that knows that it is being investigated by an oversight entity other than the bureau shall report that investigation, including the nature of that investigation, to the bureau in writing within 30 days of the institution's first knowledge of the investigation. An institution with an approval to operate that is the subject of a judgment by, a regulatory action by, increased oversight or monitoring by, or a settlement with, any oversight entity other than the bureau shall report it to the bureau within 30 days. Failure to comply with this section may subject the institution to an administrative citation pursuant to Section 94936."

. . . .

**REGULATORY PROVISIONS**

20.    California Code of Regulations, title 5, section 71600 states, in pertinent part:

"(a) An institution seeking to make a significant change in its method of instructional delivery shall complete the "Significant Change in Method of Instructional Delivery" form (INS rev. 2/10) to obtain prior authorization. For the purposes of this section a "significant change in instructional delivery" is any change that alters the way students interact with faculty or access

7

significant equipment. The form shall be submitted to the Bureau along with the appropriate fee as provided in Section 94930.5(c) of the Code. For an institution approved under section 94885 of the Code, it shall be signed and dated by the signatory(ies) required by section 71380, and for an institution approved under section 94890 of the Code, it shall be signed and dated by the signatory(ies) required by section 71390, and each fact stated therein and each attachment thereto shall be declared to be true under penalty of perjury, in the following form:

"I declare under penalty of perjury under the laws of the State of California that the foregoing and all attachments are true and correct."

| _____ | _____ |
| --- | --- |
| (Date) | (Signature) |

. . . .

21.    California Code of Regulations, title 5, section 71730 states, in pertinent part:

. . . .

"(f) The institution shall employ administrative personnel who have the expertise to ensure the achievement of the institution's mission and objectives and the operation of the educational programs."

. . . .

22.    California Code of Regulations, title 5, section 71735 states, in pertinent part:

"(a) An institution shall have sufficient facilities and necessary equipment to support the achievement of the educational objectives of all of the courses and educational programs in which students are enrolled. If an institution represents that the educational service will fit or prepare a student for employment in a particular occupation or as described in particular job titles, either of the following conditions shall be met:

(1) The equipment used for instruction or provided to the student shall be comparable in model type or features to equipment generally used in those occupations or job titles at the time the instruction is offered.

(2) The institution shall establish that the equipment used for instruction or provided to a student is not obsolete and is sufficient for instructional purposes to reasonably assure that a

8

student acquires the necessary level of education, training, skill, and experience to obtain employment in the field of training and to perform the tasks associated with the occupation or job title to which the educational program was represented to lead."

. . . .

23.    California Code of Regulations, title 5, section 71745 states, in pertinent part:

"(a) The institution shall document that it has at all times sufficient assets and financial resources to do all of the following:

(1) Provide all of the educational programs that the institution represented it would provide.

(2) Ensure that all students admitted to its educational programs have a reasonable opportunity to complete the programs and obtain their degrees or diplomas.

(3) Maintain the minimum standards required by the Act and this chapter.

(4) Pay timely refunds as required by Article 13 of the Act.

(5) Pay all operating expenses due within 30 days.

(6) Maintain a ratio of current assets to current liabilities of 1.25 to 1.00 or greater at the end of the most recent fiscal year when using generally accepted accounting principles, or for an institution participating in Title IV of the federal Higher Education Act of 1965, meet the composite score requirements of the U.S. Department of Education. For the purposes of this section, current assets does not include: intangible assets, including goodwill, going concern value, organization expense, startup costs, long-term prepayment of deferred charges, and non-returnable deposits, or state or federal grant or loan funds that are not the property of the institution but are held for future disbursement for the benefit of students. Unearned tuition shall be accounted for in accordance with general accepted accounting principles."

. . . .

24.    California Code of Regulations, title 5, section 71930 states, in pertinent part:

. . . .

"(e) All records that the institution is required to maintain by the Act or this chapter shall be made immediately available by the institution for inspection and copying during normal business hours by the Bureau and any entity authorized to conduct investigations."

. . . .

25.    California Code of Regulations, title 5, section 74110 states, in pertinent part:

. . . .

"(b) In addition to the information required by section 94934 of the Code and this section provided under penalty of perjury, the institution shall have annual financial statements prepared for the institution's prior fiscal year and signed under penalty of perjury, and shall submit a hard copy under separate cover of such statements in conjunction with its annual report. The form, content and mode of preparation of financial statements shall comply with Section 74115 of this Division. The Bureau may request that the institution immediately make available for inspection to a representative of the Bureau, these financial statements at the offices of the institution."

. . . .

## CODE OF FEDERAL REGULATIONS

26.    Code of Federal Regulations, title 34, section 668.164 states, in pertinent part:

"(h) Title IV, HEA credit balances.

(1) A title IV, HEA credit balance occurs whenever the amount of title IV, HEA program funds credited to a student's ledger account for a payment period exceeds the amount assessed the student for allowable charges associated with that payment period as provided under paragraph (c) of this section.

(2) A title IV, HEA credit balance must be paid directly to the student or parent as soon as possible, but no later than—

(i) Fourteen (14) days after the balance occurred if the credit balance occurred after the first day of class of a payment period; or

(ii) Fourteen (14) days after the first day of class of a payment period if the credit balance occurred on or before the first day of class of that payment period."

. . . .

## COST RECOVERY

27.    Section 94937, subdivision (c), provides that the Bureau may seek reimbursement costs of investigation and enforcement pursuant Business and Professions Code section 125.3.

28.    Business and Professions Code section 125.3 provides that the Board may request the administrative law judge to direct a licensee found to have committed a violation or violations of the licensing act to pay a sum not to exceed the reasonable costs of the investigation and enforcement of the case, with failure of the licensee to comply subjecting the license to not being renewed or reinstated. If a case settles, recovery of investigation and enforcement costs may be included in a stipulated settlement.

### FACTUAL BACKGROUND

29.    On or about August 30, 2023, the Bureau opened a complaint against Respondent, located at 44055 North Sierra Highway, Lancaster, CA 93534, after Respondent's accreditor, WASC Senior College and University Commission (WSCUC), placed Respondent on probation on August 22, 2023 due to financial concerns.

30.    The Bureau's investigation that ensued revealed that Respondent lacked financial strength, leadership, and sustainability as demonstrated by Respondent's operating expenses that exceeded total revenues for at least the past two years (2022 – 2023). As a result, Respondent has relied on substantial cash flow infusions from its parent company to meet financial obligations. In addition, the U.S. Department of Education (ED) conducted a review of Respondent's Title IV Federal Financial Aid and identified 20 findings of non-compliance resulting in Respondent posting a letter of credit as required by the ED.

31.    The investigation further revealed that Respondent lacks leadership and has faced significant turnover, disruption and ongoing unfilled positions among Respondent's leadership positions and board, including the Chief Financial Officer, Board Chair, and Board Vice Chair.

32.    While Respondent has reported optimistic near-term enrollment projections, it provided no evidence that these projections are reasonable or that Respondent can overcome the steady decline in enrollment it has been experiencing since 2018. Respondent's data shows declining graduation rates among associates and bachelors programs. Additional data indicate that first-year student retention rates are declining, median student debt is increasing, and undergraduate earnings are far below the WSCUC and national averages.

(UNIVERSITY OF ANTELOPE VALLEY) ACCUSATION

33.    Effective December 11, 2023, the ED placed Respondent on Heightened Cash Monitoring 2 (HCM2) due to Respondent's failure to meet applicable standards of financial responsibility and administrative capabilities.  Under the HCM2 method of payment, Respondent was no longer able to receive advance payment of Title IV Federal Financial Aid funds from the ED for eligible students.  Instead, Respondent may disburse Title IV funds to eligible students and wait for reimbursement from the ED after all expenditures are properly documented.

34.    On January 23, 2024, the California Student Aid Commission (CSAC) informed the Bureau that it placed Respondent in the At-Risk Program[2].  On February 13, 2024, the CSAC escalated their monitoring of Respondent by placing it on "Halt Pay" status which disqualifies Respondent from the Cal Grant program until it addresses and documents compliance with all state and federal laws and regulations.  On February 20, 2024, the CSAC informed Respondent that it is required to return liabilities in the amount of $65,083.00 to the Cal Grant program to satisfy a condition of Respondent's Program Compliant Review.

35.    Respondent is also involved in an Unlawful Detainer action on its properties for non-payment of rent, which resulted in Respondent's eviction from certain properties.  On February 23, 2024, Respondent entered into an Unlawful Detainer Stipulated Judgment stipulating that Respondent will vacate their premises by February 29, 2024 for the properties located at 44055, 44059, 44073 Sierra Hwy, Lancaster, CA 93536, and by March 4, 2024 for the property located at 45000 Valley Central Way, Lancaster, CA 93536.

**THE BUREAU'S EMERGENCY DECISION**

36.    On February 29, 2024, the Bureau issued Respondent a Notice of Emergency Decision, pursuant to California Code of Regulations, title 5, section 75150, subdivision (d) and Government Code section 11460.50.  This Notice informed Respondent that, effective at the close of business on March 8, 2024, it was required to cease enrollment of any new students in all

---

[2] Institutions that have numerous findings demonstrating a lack of administrative capability are placed in the Commission's At-Risk Program for a minimum of two years.  Institutions on the At-Risk Program will be required to provide eligibility documentation for approval prior to receiving Cal Grant funds.  While on the program, an audit will be conducted to ensure the institution meets the eligibility criteria before having funds disbursed for the term following the audit.  An institution that fails to meet the requirements may have its participation in the Cal Grant Program terminated.

(UNIVERSITY OF ANTELOPE VALLEY) ACCUSATION

institutional programs, cease all instruction in all institutional programs, cease the collection of tuition and fees for all institutional programs, and cease operation of all degree programs.

## FIRST CAUSE FOR DISCIPLINE

### (Failure to Demonstrate Possession of Sufficient Financial Resources)

37.   Respondent is subject to disciplinary action under Code sections 94885, subdivision (a), and 94937, subdivision (a)(2), in conjunction with California Code of Regulations, title 5, sections 75100 and 71745, subdivisions (a)(1-6), in that Respondent failed to maintain sufficient financial resources to pay operating expenses.  The circumstances are as follows:

a.   **California Code of Regulations, title 5, section 71745(a)(1) and(a)(2):**  Respondent failed to maintain sufficient financial resources to retain the facilities where it offered its educational programs on-ground, which refers to no hybrid or distance education elements.  As a result, Respondent was evicted from its instructional sites and have suspended on-ground instruction for all programs.  Due to insufficient financial resources, Respondent cannot provide all the educational programs that the institution represented it would provide.  Additionally, Respondent failed to ensure all students admitted have a reasonable opportunity to complete the programs and obtain their degrees or diplomas.

b.   **California Code of Regulations, title 5, section 71745(a)(4):**  Respondent failed to provide credit balance refunds to students.  Specifically, Respondent prepared checks to disburse payments to students, then failed to distribute to students because Respondent lacked funding to support the checks.

c.   **California Code of Regulations, title 5, section 71745(a)(5):**  Respondent failed to document that it had sufficient financial resources to pay all operating expenses within 30 days.  Respondent demonstrated that it did not have sufficient assets to pay rent, timely and fully pay its faculty, or make timely refunds to students and government agencies, such as the CSAC.

d.   **California Code of Regulations, title 5, section 71745(a)(6):**  Respondent failed to provide financial statements demonstrating that it met the minimum composite score requirements for the ED.  Respondent's audited financial statements for the year ending December 31, 2022 showed a 0.7 composite score.

Complainant refers to, and by this reference incorporates, the allegations set forth above in paragraphs 29-36, as though set forth fully herein.

**SECOND CAUSE FOR DISCIPLINE**

**(Violation of Credit Balance Refunds to Students)**

38.    Respondent is subject to disciplinary action under Code sections 94919, subdivision (a), and 94937, subdivision (a)(2), in conjunction with Code of Federal Regulations, title 34, section 668.164, subdivision (h), and in conjunction with California Code of Regulations, title 5, section 75100, in that Respondent failed to timely provide Title IV credit balance refunds to students.  Respondent prepared checks to disburse to students, but then failed to distribute them because Respondent lacked funding to support the checks.  In sum, Respondent failed to pay credit balance refunds to 396 students within 14 days.

Complainant refers to, and by this reference incorporates, the allegations set forth above in paragraphs 29-36, as though set forth fully herein.

**THIRD CAUSE FOR DISCIPLINE**

**(Untrue or Misleading Statements)**

39.    Respondent is subject to disciplinary action under Code sections 94897, subdivision (j)(2) and (j)(3), and 94937, subdivision (a)(2), in conjunction with California Code of Regulations, title 5, section 75100, in that Respondent made untrue or misleading statements as follows:

a.    On or around February 9, 2024, Respondent made misleading statements when it informed the ED that it prepared checks for all students with credit balances.  However, on February 16, 2024, Chief Financial Officer Cecilia Pineda took possession of the dated checks to prevent the distribution of them to students.

b.    Additionally, Respondent's Financial Aid Director Kevin Hoover, made an untrue statement regarding Respondent's financial aid eligibility by stating that Respondent is currently

14

1    under no restriction from the ED in regard to federal aid disbursements to students.  In fact,

2    Respondent had been placed on HCM1[3], which is an ED restriction.

3        Complainant refers to, and by this reference incorporates, the allegations set forth above in

4    paragraphs 29-36, as though set forth fully herein.

5    ### FOURTH CAUSE FOR DISCIPLINE

6    **(Prohibited Business Practices - Nondisclosure Agreements)**

7        40.    Respondent is subject to disciplinary action under Code sections 94897, subdivisions

8    (m) and (t), and 94937, subdivision (a)(2), in conjunction with California Code of Regulations,

9    title 5, section 75100, in that Respondent required its staff members to sign nondisclosure

10   agreements.  Respondent's nondisclosure agreement required employees to provide Respondent

11   at least 10 days prior notice before disclosing confidential information, including financial,

12   personnel, and business matters to the Bureau, oversight entities, or government agencies to

13   enable Respondent to oppose the disclosure or seek others protections in court.

14       Complainant refers to, and by this reference incorporates, the allegations set forth above in

15   paragraphs 29-36, as though set forth fully herein.

16   ### FIFTH CAUSE FOR DISCIPLINE

17   **(Prohibited Business Practices – Failure to Follow Institution Policy)**

18       41.    Respondent is subject to disciplinary action under Code sections 94897, subdivision

19   (u), and 94937, subdivision (a)(2), in conjunction with California Code of Regulations, title 5,

20   section 75100, in that Respondent failed to follow its own institutional policy in issuing Title IV

21   credit balance disbursements/refunds two weeks after the negative balance is adjusted by the

22   financial administrator.

23       Complainant refers to, and by this reference incorporates, the allegations set forth above in

24   paragraphs 29-36, as though set forth fully herein.

25

26

27       [3] Under the HCM1 method of payment, after a school makes disbursements to eligible
students from institutional funds and submits disbursement records to the Common Origination
and Disbursement System, it draws down FSA funds to cover those disbursements in the same

28   way as a school on the Advance Payment Method.

### SIXTH CAUSE FOR DISCIPLINE

#### (Merger of Classes, Converting Method of Delivery, Changing Locations)

42.    Respondent is subject to disciplinary action under Code sections 94898, subdivision (c), and 94937, subdivision (a)(2), in conjunction with California Code of Regulations, title 5, section 75100, in that on or around February 28, 2024, Respondent transitioned all of its degree program students from on-ground instruction to fully online programs without obtaining requisite approval from students and the Bureau as required.

Complainant refers to, and by this reference incorporates, the allegations set forth above in paragraphs 29-36, as though set forth fully herein.

### SEVENTH CAUSE FOR DISCIPLINE

#### (Making Substantive Changes without Prior Authorization)

43.    Respondent is subject to disciplinary action under Code sections 94893, 94894, subdivision (g), and 94937, subdivision (a)(2), in conjunction with California Code of Regulations, title 5, sections 75100, and 71600, subdivision (a), in that Respondent made substantive changes to its approval to operate without obtaining prior authorization as required. Specifically, Respondent reported that its on-ground instructions have changed to online courses without Bureau authorization.

Complainant refers to, and by this reference incorporates, the allegations set forth above in paragraphs 29-36, as though set forth fully herein.

### EIGHTH CAUSE FOR DISCIPLINE

#### (Failure to Report Notice of Investigation by an Oversight Entity)

44.    Respondent is subject to disciplinary action under Code sections 94934.5, subdivision (a), and 94937, subdivision (a)(2), in conjunction with California Code of Regulations, title 5, section 75100, in that Respondent failed to report to the Bureau the additional oversight imposed by the WSCUC, ED, and CSAC as follows:

a.    Respondent failed to notify the Bureau within 30 days of being placed on probation by the WSCUC.  Respondent was placed on probation on August 14, 2023 and did not notify the Bureau until September 19, 2023.

16

b.    Respondent was placed on HCM2 on December 11, 2023 by the ED and failed to notify the Bureau within 30 days of the ED's increased oversight.

c.    Respondent was placed on the At-Risk Program on January 23, 2024 by the CSAC and failed to notify the Bureau within 30 days as required.

Complainant refers to, and by this reference incorporates, the allegations set forth above in paragraphs 29-36, as though set forth fully herein.

### NINTH CAUSE FOR DISCIPLINE

**(Violation of Administration Requirements)**

45.    Respondent is subject to disciplinary action under Code sections 94885, subdivision (a)(5) and 94937, subdivision (a)(2), in conjunction with California Code of Regulations, title 5, sections 75100 and 71730, subdivision (f), in that multiple members of Respondent's administrative staff have resigned.  Respondent does not have sufficient administrative personnel who have the expertise to ensure the continuing operation of its educational programs.

Complainant refers to, and by this reference incorporates, the allegations set forth above in paragraphs 29-36, as though set forth fully herein.

### TENTH CAUSE FOR DISCIPLINE

**(Violation of Facilities and Equipment)**

46.    Respondent is subject to disciplinary action under Code section 94937, subdivision (a)(2), in conjunction with California Code of Regulations, title 5, sections 75100 and 71735, subdivision (a), in that Respondent is involved in unlawful detainer action on its properties by which it agreed to vacate various properties by February 29, 2024.  Respondent indicated that its instruction has moved offsite from Respondent's campus to online instruction.  Respondent's certificate programs offered are for on-ground instruction, and are not suitable for distance education.  Thus, Respondent does not have sufficient facilities and necessary equipment to support on-ground instruction.

Complainant refers to, and by this reference incorporates, the allegations set forth above in paragraphs 29-36, as though set forth fully herein.

(UNIVERSITY OF ANTELOPE VALLEY) ACCUSATION

1

**ELEVENTH CAUSE FOR DISCIPLINE**

2

**(Failure to Maintain Required Institutional Records)**

3

47.    Respondent is subject to disciplinary action under Code sections 94900.5, subdivision

4

(c), and 94937, subdivision (a)(2), in conjunction with California Code of Regulations, title 5,

5

sections 75100 and 71930, subdivision (e), in that during the course of the Bureau's investigation,

6

Respondent failed on multiple occasions to respond to requests for information in a timely

7

manner and make records immediately available for inspection.

8

Complainant refers to, and by this reference incorporates, the allegations set forth above in

9

paragraphs 29-36, as though set forth fully herein.

10

**TWELFTH CAUSE FOR DISCIPLINE**

11

**(Failure to Submit 2018-2020 Annual Report)**

12

48.    Respondent is subject to disciplinary action under Code sections 94929, subdivision

13

(a), 94934, subdivision (a), and 94937, subdivision (a)(2), in conjunction with California Code of

14

Regulations, title 5, sections 75100 and 74110, subdivision (b), in that Respondent failed to

15

provide their Financial Statements as part of its Annual Report submissions for the years 2018,

16

2019, and 2020 as required.

17

Complainant refers to, and by this reference incorporates, the allegations set forth above in

18

paragraphs 29-36, as though set forth fully herein.

19

**PRAYER**

20

WHEREFORE, Complainant requests that a hearing be held on the matters herein alleged,

21

and that following the hearing, the Director of the Department of Consumer Affairs issue a

22

decision:

23

1.    Revoking or suspending the Approval to Operate an Accredited Institution Code

24

Number 1936081 issued to University of Antelope Valley with University of Antelope Valley,

25

Inc., Genius Group Limited, and Roger Hamilton, CEO as owners.

26

2.    Ordering Respondent to pay the Bureau for Private Postsecondary Education the

27

reasonable costs of the investigation and enforcement of this case, pursuant to Business and

28

Professions Code section 125.3; and,

18

1      3.    Taking such other and further action as deemed necessary and proper.

2

3    DATED: 3/6/2024                          "Original signature on file"

4                                              DEBORAH COCHRANE
                                               Chief
5                                              Bureau for Private Postsecondary
                                               Education
6                                              Department of Consumer Affairs
                                               State of California
7                                              *Complainant*

8

9

10    LA2024600912
      66614769_4.docx
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(UNIVERSITY OF ANTELOPE VALLEY) ACCUSATION