**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GENIUS GROUP LIMITED, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CITADEL SECURITIES LLC, and VIRTU AMERICAS LLC,<br><br>　　　　　Defendants. | Case No. 1:25-cv-09546 (VEC)<br><br>The Honorable Valerie E. Caproni<br><br><u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GENIUS GROUP LIMITED'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF <u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT ..................................................................................................................... 3

    A. DEFENDANTS' OBJECTIONS ARE IMPROPER ............................................. 3

    B. GENIUS IS ADEQUATE ...................................................................................... 4

        1. Genius Does Not Face Unique Defenses ...................................................... 4

            (a) Genius Does Not Face Unique Loss-Causation Defenses .............. 5

            (b) Genius Does Not Face Unique Statute-of-Limitations or Reliance Defenses ................................................................................. 6

        2. Genius' Purported 'Misconduct' Does Not Defeat Adequacy ................... 8

    C. GENIUS IS TYPICAL ........................................................................................... 9

    D. CO-LEAD COUNSEL IS ADEQUATE .............................................................. 11

III. CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Alki Partners, L.P. v. Vatas Holding GmbH*,
  769 F. Supp. 2d 478 (S.D.N.Y. 2011)......................................................................................8

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) .............................................................................................10

*Bosch v. Credit Suisse Grp. AG*,
  2022 WL 4285377 (E.D.N.Y. Sept. 12, 2022) ........................................................................4

*Brownbridge v. TFI Int'l Inc.*,
  2025 WL 2476314 (S.D.N.Y. Aug. 28, 2025).........................................................................3

*City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*,
  637 F.3d 169 (2d Cir. 2011)....................................................................................................6

*Diesenhouse v. Soc. Learning & Payments, Inc.*,
  2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022)...........................................................................7

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ............................................................................................5

*Endovasc Ltd., Inc. v. J.P. Turner & Co.*,
  2004 WL 634171 (S.D.N.Y. Mar. 30, 2004).........................................................................10

*Faris v. Longtop Fin. Techs. Ltd.*,
  2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ...........................................................................9

*Finocchiaro v. NQ Mobile, Inc.*,
  2016 WL 7031613 (S.D.N.Y. Dec. 1, 2016) ..........................................................................4

*Fort Worth Emps' Ret. Fund v. J.P. Morgan Chase & Co.*,
  862 F. Supp. 2d 322 (S.D.N.Y. 2012).....................................................................................3

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
  2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020)........................................................................8

*Hogan v. Fischer*,
  738 F.3d 509 (2d Cir. 2013)....................................................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
  224 F.R.D. 550 (S.D.N.Y. 2004) ............................................................................................7

*Labul v. XPO Logistics, Inc.*,
  2019 WL 1450271 (D. Conn. Apr. 2, 2019)...........................................................................4

*Lang v. Tower Grp. Int'l*,
    2014 WL 12779212 (S.D.N.Y. June 17, 2014) ........................................................................10

*Loene v. ASP Isotopes Inc.*,
    2025 WL 3484821 (S.D.N.Y. Dec. 4, 2025) ...........................................................................11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2008 WL 2941215 (S.D.N.Y. July 30, 2008) ...........................................................................9

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) .................................................................................................................6

*In re Network Assoc., Inc. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) .....................................................................................9

*Ontario Teachers' Pension Plan Board v. Teva Pharms. Ind. Ltd.*,
    432 F. Supp. 3d 131 (D. Conn. 2019) ......................................................................................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .....................................................................................3, 8, 9

*Stanich v. Travelers Indem. Co.*,
    259 F.R.D. 294 (N.D. Ohio 2009) ...........................................................................................9

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ........................................................................................9–10

*Yang v. Trust for Advised Protfolios*,
    2022 WL 970772 (E.D.N.Y. Mar. 31, 2022) ...........................................................................3

*Yates v. Open Joint Stock Co. "Vimpel-Communications"*,
    2005 WL 1018428 (S.D.N.Y. Apr. 29, 2005) ..........................................................................3

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................................................3, 4

Genius Group Limited ("Genius") respectfully submits this reply in support of its Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (ECF 27, "Motion"), and in response to Defendants' Opposition (ECF 31, "Opp.").

I. **PRELIMINARY STATEMENT**

For years, Defendants aggressively manipulated Genius' stock price, profiting at the expense of other market participants, including their own customers. Even after they were caught by the SEC, Defendants continued to deploy the manipulative trading practices alleged in the Complaint, and even ***boasted*** about them. In their latest display of jaw-dropping chutzpah, Defendants now ask this Court to allow them to pick who gets to sue them, larding their arguments with misstatements of fact and law.

The PSLRA requires appointment of the movant with the largest loss who makes a *prima facie* showing of adequacy and typicality. By necessity, the Rule 23 inquiry at this early stage is limited. Though Defendants pretend otherwise, this is not class certification, summary judgment, or trial. Both the PSLRA, and the courts interpreting it, leave little room for defendants accused of fraud to vote on who is most motivated to sue them, and have repeatedly rejected attempts to hijack the appointment process by means of the same merits-driven arguments Defendants raise here. But Defendants' arguments are not only procedurally improper, they are wrong.

***First***, Defendants' argument that issuers are categorically barred from serving as lead plaintiffs finds no support in the PSLRA or common sense. Nothing in the statute excludes issuers from invoking its protections. Issuers have standing to assert Exchange Act fraud claims and, as here, may be the most motivated and best situated plaintiffs to represent others harmed by the same misconduct. Defendants claim, without support, that ***certain*** of Genius' Class Period sales were untouched by their manipulation, rendering Genius "atypical." Putting aside that this argument is

1

premature and wrong, Defendants ignore Genius' sale of more than ***44 million shares*** through at-the-market offerings that are indistinguishable from other Class members' open-market sales.

*Second*, Defendants claim that Genius will face "unique" defenses, but none of these speculative defenses are meritorious or unique to Genius. For instance, Defendants argue that Genius will face a unique statute-of-limitations defense because it conducted a pre-suit investigation—diligence that, ironically, courts cite as a hallmark of adequacy—but offer no evidence about what the investigation uncovered and when. Instead, they point to snippets of Genius' public statements, none of which shows that Genius discovered "facts constituting the violation" more than two years before filing the Complaint. The complete statements, which Defendants misleadingly elide, belie any such claim. In any event, because the press releases on which Defendants rely were public, they do not raise any defenses unique to Genius.

Defendants also argue that Genius will face a unique loss-causation defense arising from claims in unrelated litigation that another group of defendants *also* adversely affected its stock price for a small subset of the Class Period. But Defendants incorrectly assume these claims are mutually exclusive. In any event, whether Defendants' conduct *here*, as opposed to other factors, affected Genius' stock price is a Class-wide issue.

*Third*, Defendants accuse Genius of "misconduct," but cite no criminal convictions, regulatory judgments, decrees, or ongoing investigations involving Genius. Instead, Defendants attempt to sensationalize a three-year-old NYSE warning letter involving a "minor violation" of exchange guidelines and unrelated operational difficulties experienced by an acquired university. None of this rebuts Genius' adequacy.

## II.     ARGUMENT

### A.     DEFENDANTS' OBJECTIONS ARE IMPROPER

Defendants' reliance on merits-driven arguments to hijack the appointment process is improper.  Under the PSLRA, the Court "shall" appoint the movant with the "largest financial interest in the relief sought" who makes a *prima facie* showing of typicality and adequacy.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  That presumption "may only be rebutted upon proof *by **a member of the purported plaintiff class*** that the presumptively most adequate plaintiff" is inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).[1]  Courts recognize this language generally "does not provide for any involvement by a defendant in the initial selection of a lead plaintiff."  *Fort Worth Emps' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 325 (S.D.N.Y. 2012); *see also Yang v. Trust for Advised Portfolios*, 2022 WL 970772, at *4 n.3 (E.D.N.Y. Mar. 31, 2022) ("presumption may be rebutted ***only upon proof by a member of the purported plaintiff class***…which Defendants are not.").

Even in the narrow circumstances where courts have "permitt[ed] defendants to make a *limited* facial challenge"[2] to a lead plaintiff motion, they reject fact-intensive merits objections as premature.  *See Brownbridge v. TFI Int'l Inc.*, 2025 WL 2476314, at *4 (S.D.N.Y. Aug. 28, 2025) (rejecting adequacy objection based on loss size); *Yates v. Open Joint Stock Co. "Vimpel-Communications"*, 2005 WL 1018428, at *2–3 (S.D.N.Y. Apr. 29, 2005) (rejecting purported "unique" loss-causation defense).

At this stage, courts limit defense-side objections to narrow procedural defects and facial deficiencies, such as inadequate notice or untimeliness.  *See Pirelli*, 229 F.R.D. at 406 n.16, 408.

---

[1] All emphasis is added, and internal citations and quotations are omitted.
[2] *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 406 (S.D.N.Y. 2004).

Defendants' *own cases* underscore the narrow scope of defense-side challenges courts (infrequently) permit. *See Finocchiaro v. NQ Mobile, Inc.*, 2016 WL 7031613, at *2–3 (S.D.N.Y. Dec. 1, 2016) (entertaining procedural objections based on defective notice, untimely motions, and gross misconduct in prosecuting the action); *Bosch v. Credit Suisse Grp. AG*, 2022 WL 4285377, at *5–6 (E.D.N.Y. Sept. 12, 2022) (permitting defense objection where movant claimed only $621 loss, undermining incentive to supervise counsel as required by PSLRA—a facial deficiency apparent from movant's own motion).

Here, *no* "member of the purported plaintiff class" objected to Genius' appointment or questioned its ability to protect the Class's interests. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Only the Defendants accused of fraud object. They raise none of the narrow procedural objections courts have occasionally entertained, but, instead, make only merits-based arguments that courts repeatedly find premature and improper at this stage. If accepted, Defendants' argument would impermissibly expand Defendants' role in selecting the plaintiff best situated to sue them and transform the lead plaintiff process into a pre-discovery adjudication of defenses.

### B. GENIUS IS ADEQUATE

Defendants' objections are not only procedurally improper, they are factually and legally incorrect. None of Defendants' arguments rebut Genius' *prima facie* showing of adequacy.

#### 1. Genius Does Not Face Unique Defenses

Defendants argue that Genius is subject to unique defenses, creating a "conflict" with the Class. Opp. at 13. Not so. A *prima facie* showing of adequacy can be rebutted only by specific, non-speculative evidence of a unique defense that would prevent Genius from fairly representing the Class. *See Labul v. XPO Logistics, Inc.*, 2019 WL 1450271, at *9 (D. Conn. Apr. 2, 2019). Even at class certification, a conflict defeats adequacy only where it "is so palpable as to outweigh

4

the substantial interest of every class member in proceeding with the litigation." *Dietrich v. Bauer*, 192 F.R.D. 119, 127 (S.D.N.Y. 2000). Defendants fall far short of this standard.

*(a)     Genius Does Not Face Unique Loss-Causation Defenses*

Defendants argue that Genius should be disqualified because it purportedly faces a unique "loss-causation" defense arising from a RICO case it filed alleging that certain individuals used "nominee" entities to illegally sell Genius stock.[3] Opp. at 14–16. Defendants argue that the pendency of this case exposes Genius to a unique loss-causation defense because it alleges that other defendants *also* artificially depressed Genius' stock between February 14 and May 7, 2025. Defendants are wrong.

First, Defendants ignore that a single daily stock price movement can have multiple component causes. **Here**, Genius seeks damages for the artificial deflation caused by Defendants' spoofing over the ***three-year*** Class Period. In the RICO case, Genius seeks damages for the ***incremental*** deflation caused by the RICO defendants' over a three-month subset of the Class Period. Defendants' argument wrongly assumes that allegations of artificial deflation are mutually exclusive; that if there is, say, $2 of artificial deflation in a stock, one defendant must be responsible for all of it or none. That Genius is pursuing parallel litigation seeking redress against ***different defendants*** for ***different harm*** arising from a ***different set of facts*** does not create a conflict or expose Genius to unique defenses. *See Dietrich*, 192 F.R.D. at 126–27 (rejecting the same argument).

Moreover, Defendants ignore that their loss-causation argument, namely that Genius' stock declines are attributable to causes ***other than*** Defendants' fraud, is not unique to Genius. ***All*** Class members must show that their losses were caused by Defendants' misconduct (including by

---

[3] These allegations are corroborated by an SEC complaint filed against one of those individuals alleging this same conduct. *See SEC v. Clayton*, No. 2:24-cv-918 (D. Utah 2024).

5

disaggregating any competing causes), no matter who leads the Class. Genius is no differently situated than any other Class member.

Defendants' out-of-Circuit cases are inapposite. In *Rice v. Genworth Financial Inc.*, unlike here, the same plaintiff simultaneously pursued a derivative claim ***on behalf*** of a company and securities fraud claims ***against it***. 2017 WL 3699859, at *12 (E.D. Va. Aug. 25, 2017). *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.* is likewise unavailing. There, movants pursued parallel securities actions involving the same issuer and overlapping disclosures, requiring them to argue that the ***same statements*** were ***deflationary*** in one action and ***inflationary*** in the other. 529 F. Supp. 3d 385, 399–400 (E.D. Pa. 2021). Here, Genius asserts different claims against different defendants for different conduct giving rise to different harms. Nothing alleged in Genius' RICO case "contradicts" the allegations here.

> (b)   *Genius Does Not Face Unique Statute-of-Limitations or Reliance Defenses*

Defendants argue that Genius' diligent pre-suit investigation—conduct reflecting its *qualities* as a lead plaintiff—somehow renders it unfit by creating "unique" statute-of-limitations defenses. Opp. at 16–18. But Defendants offer no evidence that Genius, or any reasonably diligent investor, discovered facts sufficient to plead their claims more than two years before the Complaint was filed.

The limitations period in a securities fraud action begins to run when a diligent plaintiff would have discovered sufficient facts to plead its claims with the particularity required to survive a Rule 12(b)(6) motion—"***not*** when a reasonable investor would have begun investigating." *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011); *see also Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (limitations period runs upon discovery of "the facts constituting the violation"—***not*** when "storm warnings" prompt plaintiff to "begin investigating").

6

Defendants bear the burden of identifying *specific facts* "showing that the plaintiffs could have pled their claims earlier." *Ontario Teachers' Pension Plan Board v. Teva Pharms. Ind. Ltd.*, 432 F. Supp. 3d 131, 178–79 (D. Conn. 2019).  Courts have repeatedly held that potential statute-of-limitations defenses do not defeat adequacy at this stage.  *See e.g., In re Initial Pub. Offering Sec. Litig.*, 224 F.R.D. 550, 554–55 (S.D.N.Y. 2004).

Here, Defendants identify *no* "specific facts" regarding what Genius' pre-suit investigation showed and when.  Instead, Defendants rely on misleadingly elided snippets from Genius' public statements.  But none of those snippets indicate that Genius knew, and could plead with requisite particularity: the scope of the alleged manipulation; that Defendants were the perpetrators; that Defendants' acted with scienter; or how Defendants' conduct caused losses.  Nothing Defendants cite indicates that Genius could have filed the Complaint more than two years earlier than it did, particularly where alleged misconduct *post-dates* the cited statements.  *See Diesenhouse v. Soc. Learning & Payments, Inc.*, 2022 WL 3100562, at *6 (S.D.N.Y. Aug. 3, 2022) (rejecting statute-of-limitations argument absent discovery of facts "with sufficient detail and particularity to demonstrate each element" of claim).

The full text of Genius' statements shows that, until December 2023, the Company was still amassing the facts needed to file the Complaint.[4]  Defendants assert that Genius announced "proof" of manipulation as early as January 2023 (Opp. at 17), but omit the portion stating that the "*[i]nitial results*" of the investigation indicated illegal trading and that Genius would "*continue to investigate*" the nature of the conduct and the identities of those responsible.  Opp. at Ex. 27.  Consistent with that, Genius announced on August 17, 2023 that its attorneys would "*continue to*

---

[4] These facts are particularly complex given, *inter alia*, the anonymized nature of U.S. trading data.  Defendants suggest that Genius could have sued "doe defendants," but that argument both assumes, without support, that Genius possessed all facts except identities and contravenes Second Circuit law.  *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Generally, 'John Doe' pleadings cannot be used to circumvent statutes of limitations.").

7

*investigate whether there is credible evidence*" of manipulation. *Id*. It was not until **December 21, 2023** that Genius announced that, although the investigation remained "ongoing," it believed it had "sufficient evidence to commence litigation." *Id*. Genius commenced this action within two years of that announcement, on November 14, 2025.

Likewise, Defendants' argument that Genius faces a unique reliance defense—based solely on the same misleadingly incomplete excerpts of its statements—fails. Opp. at 18–20. Defendants do not show that Genius believed the suspected manipulation would continue despite public warnings aimed at deterring the misconduct or otherwise knew the market was manipulated at the time of the trades at issue. Nor do Defendants explain how an investigation into earlier suspicious trading activity could defeat reliance for later trades. Defendants' argument wrongly assumes that any suspicion of past misconduct places investors on perpetual notice that a market remains manipulated at all times and indefinitely into the future.[5]

In any event, the public statements Defendants cite were available to all market participants and therefore do not give rise to any defenses "unique" to Genius. With respect to Defendants' arguments that these public statements undermine reliance or trigger the statute of limitations, Genius is situated no differently than every other Class member.

### 2. Genius' Purported 'Misconduct' Does Not Defeat Adequacy

Defendants argue that Genius' adequacy should be "doubted" based on two irrelevant events: a NYSE warning regarding its March 2023 disclosures and financial troubles by an acquired university. Opp. at 20–21. Those are not enough to rebut adequacy. *See Pirelli*, 229

---

[5] Defendants' cases are inapposite. *See Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 493 (S.D.N.Y. 2011) (motion-to-dismiss decision where plaintiffs, "by their own admissions, did not rely on that market"); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *8 (S.D.N.Y. Sept. 16, 2020) (misstatement case where movant traded after fraud fully revealed).

F.R.D. at 416–17 (unproven violations of prior misconduct do not rebut adequacy absent "specific connection" between misconduct and allegations in the action); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 315 (N.D. Ohio 2009) ("[U]nrelated unethical or even criminal conduct is not sufficient to support a finding of inadequacy."). Defendants mischaracterize the authority they cite for the proposition that unproven prior accusations establish inadequacy.[6]

Defendants identify no criminal or civil actions against, or even investigations involving, Genius. Instead, Defendants mischaracterize the 2023 NYSE warning letter as finding that Genius "provided misleading information" or "violated . . . securities laws." Opp. at 20–21. It did not. A warning letter reflects a "minor violation" of NYSE disclosure guidelines and has no bearing here. *See* NYSE Company Guide §1009(a)(i); *Pirelli*, 229 F.R.D. at 417 (only "serious misconduct" rebuts adequacy).

Next, Defendants rely on documents alleging financial difficulties at a Genius subsidiary university that ultimately stipulated to closing. *See* Opp. at Exs. 6–10. These exhibits reflect unproven allegations, not misconduct. *See Pirelli*, 229 F.R.D. at 416 (findings of misconduct from settlement do not equate to proven wrongdoing). Neither mischaracterization provides any basis to question Genius' adequacy to represent the Class.

### C.  GENIUS IS TYPICAL

Genius has made the requisite *prima facie* showing of typicality. Typicality does not require "identical" claims, only that the movant's "injuries arose from the same course of conduct" that injured other class members. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D.

---

[6] *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2008 WL 2941215, at *6 (S.D.N.Y. July 30, 2008) (evidence of prior wrongdoing, including convictions, is "not persuasive (in that it fails to rebut the presumption of adequacy afforded to a lead plaintiff)"); *Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (disqualifying movant where a Chapter 11 trustee alleged movant knowingly profited from a Ponzi scheme); *In re Network Assoc., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (declining appointment of financial institution whose sister banks were under criminal fraud investigations, had been raided, and CEO arrested for tax evasion and fraud).

248, 253 (S.D.N.Y. 2003). Both Genius' and the Class' claims turn on whether Defendants engaged in a scheme violating the securities laws and artificially depressed Genius' stock.

Defendants argue that Genius is atypical because it is an issuer and because the form of its sales differs from those of other Class members. Opp. at 22. Neither argument rebuts typicality. Defendants' sweeping assertion that an issuer may never serve as lead plaintiff under the PSLRA has no basis in law or common sense, and nothing in the statute excludes issuers from invoking its protections. *See Superintendent of Ins. Of State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 9 (1971) (issuers are "clearly protected by [Section 10(b)] of the Securities Exchange Act").

Defendants also incorrectly claim that Genius is atypical because it sold stock during the Class Period at negotiated prices allegedly unaffected by their misconduct. *Id*. at 23. But they ignore that Genius sold ***44 million shares*** in at-the-market offerings—sales ***at prevailing market prices*** indistinguishable from other Class member's open-market sales and likewise affected by Defendants' misconduct. *See* Motion at 2.

Defendants point to ***other*** transactions in which Genius issued stock to satisfy liabilities to employees or third parties, and claim, without support, that these transactions were unaffected by their manipulation. Defendants ask this Court to find, ***at the lead plaintiff stage***, that no damages attach to these transactions. That request is premature. *See In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105 (S.D.N.Y. 2016) (loss causation need not be shown at class certification).[7] It is also illogical: Defendants' manipulation depressed Genius' stock price, forcing the Company to

---

[7] Defendants' citations are misleading. *See Endovasc Ltd., Inc. v. J.P. Turner & Co.*, 2004 WL 634171, at *12 (S.D.N.Y. Mar. 30, 2004) (granting motion to dismiss on standing grounds, where plaintiff did not allege any purchase or sale of manipulated stock); *Lang v. Tower Grp. Int'l*, 2014 WL 12779212, at *3–4 (S.D.N.Y. June 17, 2014) (declining to appoint sole lead plaintiff who acquired 35% of its shares through private placement, but appointing that movant as co-lead).

issue *more* securities to cover fixed liabilities; both the source and quantum of that harm are typical of all Class members.

In any event, courts in this District have repeatedly held that formal differences in a lead plaintiff movant's transactions do not render it atypical where the claims turn on the same alleged misconduct. *See, e.g.*, *Loene v. ASP Isotopes Inc.*, 2025 WL 3484821, at *28 (S.D.N.Y. Dec. 4, 2025) (differences in manner of acquisition "do not defeat typicality so long as their injuries stem from the same" misconduct).

### D. CO-LEAD COUNSEL IS ADEQUATE

Defendants' attack on Christian Attar is misleading and incomplete. Christian Attar has litigated and defeated motions to dismiss in "spoofing" cases brought by the very firms and Defendants now seeking to disqualify him, and has obtained favorable recoveries in numerous market manipulation actions, often alongside well-recognized plaintiffs' firms.

Defendants also mischaracterize Mr. Christian's professional background and disciplinary history. Opp. at 25–26. Christian Attar is not a "five-lawyer firm," and firm size has no bearing on adequacy. Nor does a decades-old sanctions order arising from a single pleading dispute establish present unfitness, particularly where no court has found any pattern of misconduct. Defendants' suggestion that there are pending sanctions motions against Mr. Christian in this District is also incorrect; the only cited pre-motion letter was rendered moot when the court denied defendants' motion to dismiss.

### III. CONCLUSION

Genius respectfully requests that this Court grant its Motion.

| | |
|---|---|
| Dated: New York, New York<br>January 27, 2026 | Respectfully submitted,<br><br>/s/ *Abe Alexander*<br>Abe Alexander<br>**GRANT & EISENHOFER P.A.**<br>485 Lexington Avenue<br>New York, NY 10017<br>Telephone.: (646) 722-8500<br>Facsimile: (646) 722-8501<br>aalexander@gelaw.com<br><br>Stephen W. Tountas<br>**KASOWITZ LLP**<br>1633 Broadway<br>New York, New York 10019<br>Telephone: (212) 506-1700<br>stountas@kasowitz.com<br><br>James W. Christian<br>**CHRISTIAN ATTAR**<br>1177 W. Loop South, Suite 1700<br>Houston, TX 77027<br>Telephone: (713) 659-7617<br>Facsimile: (713) 659-4641<br>jchristian@christianattarlaw.com<br><br>*Counsel for Genius Group Limited and Proposed Lead Counsel for the Class* |

## **CERTIFICATE OF WORD COUNT**

The undersigned counsel of Genies Group Limited certifies that this brief contains 3,376 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on January 27, 2026.

*/s/ Abe Alexander*
Abe Alexander

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on January 27, 2026, I caused the foregoing to be filed electronically with the Court's Case Management / Electronic Case filing System ("CM/ECF"). Notice of the filing was sent to all parties of record by operation of the Notice of Electronic Filing System, and the parties to this action may access the filings through CM/ECF.


                                           */s/ Abe Alexander*
                                           Abe Alexander