UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

GENIUS GROUP LIMITED, individually and on  :
behalf of all others similarly situated,          :
                                                          :
                               Plaintiff,         :
                                                          :
            -against-                              :
                                                          :
CITADEL SECURITIES LLC and VIRTU          :
AMERICAS LLC,                                    :
                                                          :
                               Defendants.   :

------------------------------------------------------------- X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: 6/18/2026            │
└─────────────────────────────────┘
```

25-CV-9546 (VEC)

<u>OPINION & ORDER</u>

VALERIE CAPRONI, United States District Judge:

On January 16, 2026, Genius Group Limited ("Genius") filed a Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, Dkt. 27.  No other plaintiffs came forward to compete to be named Lead Plaintiff or objected to Genius's Motion.  Defendants Citadel Securities LLC and Virtu Americas LLC, on the other hand, opposed Genius's Motion, Dkt. 31.

In April, Genius submitted supplemental authority addressing one of the arguments in Defendants' Opposition, Dkt. 34, and Defendants responded, Dkt. 35.  Then, in May, the Court ordered (1) the parties to confer and (2) if unsuccessful at reaching agreement, to file supplemental briefing on the question of next steps in the event the Court denied Genius's application to serve as Lead Plaintiff.  Order, Dkt. 36.  Because the parties did not agree on next steps, they submitted supplemental briefing.  Defs.' Letter, Dkt. 38; Genius's Letter, Dkt. 39.

For the following reasons, Genius's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel is DENIED.  The Court declines to reopen the Lead Plaintiff application process; this action may proceed on behalf of Genius on an individual basis.

1

**BACKGROUND**

Genius moved to serve as Lead Plaintiff pursuant to Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B).[1]  Genius's Mem. of Law in Supp. of Mot. to Serve as Lead Pl. and Approval of Selection of Lead Counsel ("Genius's Mem."), Dkt. 28 at 1.

Genius asserts claims pursuant to Sections 9 and 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78i, and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants Citadel Securities LLC and Virtu Americas LLC.  Complaint, Dkt. 1 at ¶¶ 89–105. Genius asserts these claims on behalf of itself and all other similarly situated persons who, between April 12, 2022, and May 30, 2025, inclusive ("Class Period"), sold securities of Genius ("Class").  *Id.* at ¶¶ 82–83.

At a high level, Genius alleges that, over the course of those three years, Defendants illegally manipulated the price of Genius's shares via a practice known as spoofing.[2]  *Id.* at ¶¶ 28–56.  Genius alleges that, via at least 1,395,792 spoofing orders, Defendants artificially depressed the market price of Genius's stock, harmed the Class, and violated federal securities

---

[1]    In its most recent letter to the Court, Genius seeks leave to withdraw its Motion — and reopen the Lead Plaintiff process — because it "believes the Class'[s] interests are best served by appointment of a Lead Plaintiff with whom the Court is unreservedly comfortable."  Genius's Letter, Dkt. 39 at 1.  As the Court does not intend to reopen the Lead Plaintiff process (and understands these two requests to be linked), the Court denies Genius's request for leave to withdraw its Motion and instead rules on the merits.

[2]    Spoofing is an illegal trading practice that entails placing or executing manipulative trades that change the appearance of the supply and demand of certain stocks and are designed to artificially shift the price of those stocks. Traders engaging in spoofing may, for example, submit and then, within milliseconds, cancel a high number of "baiting orders," i.e., fictious trades that they never intend to execute.  These actions are intended to mislead other market participants and, in turn, influence pricing.  *See, e.g.*, Jonathan Brogaard, *et al.*, *Does High Frequency Market Manipulation Harm Market Quality?* (2022).

laws. *Id.* at ¶¶ 33–66.  Genius now seeks to represent the Class of its shareholders as Lead Plaintiff.

In its Motion, Genius also asks the Court to approve its selection of three law firms — Grant & Eisenhofer P.A., Kasowitz LLP, and Christian Attar — as Lead Counsel for the Class. Genius's Mem. at 9–10.

### DISCUSSION

**I.      Legal Standard**

Federal law requires this Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C § 78u-4(a)(3)(B)(i).  In making this determination, the Court must presume "that the most adequate plaintiff . . . is the person" that (1) "has either filed the complaint or made a motion in response to a notice" publicly advertising the filing of the action; (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I).  As to this last factor, a would-be Lead Plaintiff must make "only a *prima facie* showing that the requirements of Rule 23 are met," and the Court need only consider Rule 23's typicality and adequacy-of-representation requirements. *Elstein v. Net1 UEPS Techs., Inc.*, No. 13-CV-9100 (ER), 2014 WL 3687277, at *7 (S.D.N.Y. July 23, 2014); *see also, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[T]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA. . . .  Further, at this stage of litigation, only a preliminary showing of typicality and adequacy is required." (citations omitted)). Although the analysis of typicality and adequacy need not be as robust as when discussing class

certification, a party moving to serve as Lead Plaintiff must make a "preliminary showing" of typicality and adequacy.  *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535, 539 (S.D.N.Y. 2015).

### A.  Typicality

Rule 23's typicality requirement is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Elstein*, 2014 WL 3687277, at *7 (quotation omitted); *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 350 (E.D.N.Y. 2018) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (citations omitted)).  Typicality does not require identical facts shared by the Lead Plaintiff and other Class members.  *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015) (quoting *Pennsylvania Ave. Funds v. Inyx Inc.*, No. 08-CV-6857 (PKC), 2011 WL 2732544, at *4 (S.D.N.Y. July 5, 2011)).  It does, however, require substantial similarity.  *McCormack v. Dingdong (Cayman) Ltd.*, No. 22-CV-7273 (VSB), 2022 WL 17336586, at *4 (S.D.N.Y. Nov. 30, 2022) (citing *Canson v. WebMD Health Corp.*, No. 11-CV-5382 (JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011)).  In other words, "the disputed issues of law or fact [must] occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *Id.*

### B.  Adequacy

Turning now to adequacy, pursuant to Rule 23(a)(4), the Lead Plaintiff must "fairly and adequately protect the interests of the class."  In determining adequacy, courts consider the Lead Plaintiff's interest in the outcome of the case (to ensure sufficient advocacy), the competence of proposed class counsel, and any conflicts between the Lead Plaintiff and members of the Class.

4

*Hom v. Vale, S.A.*, Nos. 15-CV-9539, 16-CV-658 (GHW), 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016).

Regarding class counsel in particular, pursuant to the PSLRA, a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court reviews the proposal and will not allow it if the selection of counsel fails to protect the interests of the class. *See In re Nortel Networks Corp. Sec. Litig.*, No. 01-CV-1855 (RMB), 2002 WL 1492116, at *1 (S.D.N.Y. Feb. 4, 2002).

## II.    Application

The PSLRA does not explicitly address issuers seeking to represent their own shareholders in class action lawsuits. *See* Defs.' Mem. of Law in Opp'n to Genius's Mot. to Serve as Lead Pl. and Approval of Selection of Lead Counsel ("Defs.' Mem."), Dkt. 31 at 2 ("Nothing in the legislative history of the [PSLRA] indicates that Congress intended or even contemplated that issuers would represent their own stockholders in class action lawsuits."). Genius cites no cases in which an issuer was approved to serve as Lead Plaintiff for a class of its shareholders. *Id.* Nonetheless, the usual tests are appropriate to determine whether Genius is fit to serve as Lead Plaintiff.[3]

Here, Genius sold nearly 219 million of its own shares for proceeds of more than $140 million during the Class Period. Genius's Mem. at 2 (citing Alexander Decl. Ex. B). Genius is, to the best of Genius's knowledge, the movant with the largest financial interest in the relief sought by the Class. Genius's Mem. at 7. That, however, speaks only to *prima facie* adequacy. *See* Defs.' Mem. at 12. Genius cannot show that is typical or adequate under Rule 23. The Court will take each of those requirements in turn.

---

[3]    Although the timeliness of the lawsuit is contested, the timeliness of Genius's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel is not. *See* Genius's Mem. at 5–6.

5

### A. Typicality

Genius cannot satisfy the typicality requirement given the atypical nature of its transactions in Genius's common stock. *See* Defs.' Mem. at 3. Genius routinely uses its own shares as currency in private transactions with its investors, employees, and other third parties. Defs.' Mem. at 6–7. In other words, Genius repeatedly issued shares in private transactions at contractually-set prices that differed from those available in the public market. In those transactions, Genius did not sell shares in reliance on the market price for Genius common stock. Those sales — and their implications — represent more than "formal differences" between Genius and its shareholders. *See* Genius's Reply Mem. of Law in Supp. of Mot. to Serve as Lead Pl. and Approval of Selection of Lead Counsel ("Reply Mem."), Dkt. 33 at 11.

Genius "disposed of" approximately 80% of its shares during the Class Period through atypical transactions including conversions, warrant exercises, option exercises, and merger consideration. Those sales are fundamentally different from sales of Genius stock by other shareholders in the public market. Although Genius made some sales that were indistinguishable from other Class members' sales, those sales were significantly outnumbered by non-market sales.[4] *See* Reply Mem. at 2. Because most transactions were made off-the-market, the issuer's experience is simply not typical. *See, e.g.*, *Lang v. Tower Grp. Int'l, Ltd.*, Nos. 13-CV-5852, 13-CV-6181, 13-CV-7085 (AT), 2014 WL 12779212, at *3 (S.D.N.Y. June 17, 2014) (declining to appoint as Lead Plaintiff movant who acquired at least 35% of its shares through private placement and at a discount).

---

[4] After setting aside the atypical transactions, it is not clear whether Genius is the person with the largest loss. Genius asserts that during the Class Period, it sold nearly 44 *or* 60 million shares through at-the-market offerings, *contrast* Genius's Mem. at 2 *with id.* at 5; while that quantity of sales is undoubtedly significant, the Court lacks insight into how it compares to the sales of other putative class members.

*B. Adequacy*

Although deciding that Genius is not typical is sufficient to deny Genius's Motion, the Court also considers adequacy, as to which the parties dedicated much ink. Genius's financial interest in the litigation and commitment to the integrity of the securities and the protection of its shareholders are not in question. Genius has undoubtedly demonstrated that it would be a vigorous advocate on behalf of itself and the Class.

Genius, however, cannot satisfy the adequacy requirement because it faces unique defenses. Genius's appointment risks injecting unique defenses and conflicts that distract from issues common to the Class. At this stage, the Court need not resolve the merits of any such disputes. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 481 (S.D.N.Y. 2002) (requiring "a *preliminary determination* of whether a unique defense to the claim of a potential class representative may shift the focus of the litigation to the detriment of the class members") (emphasis added).

Defendants make much of "the inherent tension between the market manipulation claims [Genius] alleges against Defendants here and its separate fraud claims against other defendants." Defs.' Mem. at 13–14. What Genius alleges in other lawsuits is only a problem insofar as it is mutually exclusive with what it alleges here, which it may not be. *See id.* at 13–16. It is axiomatic that stock price movement can have multiple causes. Without wading further into the merits of this lawsuit or others, that is not a basis for denying Genius's Motion.

The timeliness of the claims, however, poses a problem for Genius's application to serve as Lead Plaintiff. Genius may have discovered the violations alleged in the Complaint well more than two years prior to filing suit, as evidenced by the independent investigation that the company undertook, seemingly beginning in November 2022, and its announcement in January

2023 that it had "proof" of misconduct. *See id.* at 3, 8–9, 16–18 (citing 28 U.S.C. § 1658(b) (establishing a statute of limitations, allowing lawsuits to be filed of within two years of discovery of the violation)). Genius responds that because press releases regarding its investigation were public, other shareholders would have had access to the information as well, so any statute of limitations defenses are not unique to Genius. *See* Reply Mem. at 2. It is, however, apparent that the company conducting the investigation and the other shareholders who may or may not have seen press releases would possess different information and varying levels of certainty regarding the injury. Relatedly, as Defendants argue, Genius's decision to trade despite its belief that its stock was being manipulated may subject it to a unique reliance defense. *See* Defs.' Mem. at 18–20 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007)) (explaining that Genius's investigation of alleged market manipulation demonstrates why it could not have sold shares in "reliance on an assumption of an efficient market free of manipulation").

Defendants need not prove these unique defenses at this stage, nor must the Court decide whether the defenses are meritorious. *See, e.g.*, Reply Mem. at 7. Plaintiff's supplemental authority brings the Court's attention to a case that Plaintiff asserts rejects the statute of limitations argument that Defendants make here. Genius's Letter, Dkt. 34. Defendants argue that the cited case is factually distinguishable: when analyzing whether the clock has started on the statute of limitations, retention of experts for an investigation is different than "self-proclaimed, *actual discovery*" of misconduct. Defs.' Letter, Dkt. 35 at 1–2. Defendants also point out that this submission exemplifies the exact type of distraction related to a unique affirmative defense that having Genius as Lead Plaintiff risks. *Id.* at 1. The Court agrees. As

demonstrated here, it is likely that Genius will be subject to unique defenses given the unique information to which it had access as the issuer, leaving it as an inappropriate Lead Plaintiff.[5]

Turning to proposed Lead Counsel, Genius offers no explanation why three "eminently qualified" firms have been proffered. Genius's Mem. at 3. Grant & Eisenhofer P.A is a "preeminent" securities class action firm, and Kasowitz LLP and Christian Attar are both skilled litigation shops, purportedly with specific experience in spoofing cases. *Id.* at 9. Why does each require the support of multiple other firms to litigate this case? Why would one or even two of these firms not be sufficient? This question seems especially pressing given that Genius stresses that its in-house counsel will be tasked with "close oversight of the litigation and outside counsel." *Id.*

This is not a case where co-Lead Plaintiffs each represent a portion of the class and bring distinct counsel to the table. *See In re Oxford Health Plans, Inc. Securities Litigation*, 182 F.R.D. 42 (1998). Nor is it a case with an extraordinary geographic scope, requiring the need for more attorney resources. *See In re Lernout & Hauspie Securities Litigation*, 138 F. Supp. 2d 39 (D. Mass. 2001). Genius has not demonstrated that this lawsuit is so complex that it requires more than one competent firm to litigate it. *See In re Allergan PLC Sec. Litig.*, No. 18-CV-12089 (CM) (GWG), 2020 WL 5796763, at *7 (S.D.N.Y. Sept. 29, 2020). Genius also has not described the proposed division of labor among the proposed co-counsel. *See Friedman v. Rayovac Corp.*, 219 F.R.D. 603, 605 (2002).

---

[5]    Because of the existing grounds to rule on Genius's Motion, the Court need not wade into the alleged history of misconduct by Genius, including a 2023 warning letter from the New York Stock Exchange and 2024 order from the California Department of Consumer Affairs. *See* Defs.' Mem. at 1, 3, 20–21. Needless to say, if factually accurate, having provided misleading information to the same investors that one seeks to represent would not be a good fact for a Lead Plaintiff applicant. *Id.* at 21 ("NYSE's finding is even more concerning here, where the investors Genius was found to have provided misleading information to are the very same investors Genius now seeks to represent on a class-wide basis.").

9

Too many cooks in the kitchen present a foreseeable risk.  Three firms leave more room for error, including in selection.  This risk feels especially pressing where Defendants raise issues with Mr. James Wes Christian, a principal attorney of Christian Attar.  According to Defendants, Mr. Christian has been sanctioned in another alleged market manipulation case and has two sanctions motions pending against him for similar misconduct.  Defs.' Mem. at 25–27.  Genius rebuts these allegations, *see* Reply Mem. at 11, and the Court is not opining on his ethics or competence.  Nevertheless, the issue illustrates the dangers of going long on law firms.

These are not the only issues.  Without a better understanding of the fee structure, this choice of counsel poses a substantial risk of increasing the cost of counsel without any clear benefit to the Class.  *See In re Allergan PLC Sec. Litig.*, 2020 WL 5796763, at *7 ("I disagree with the premise that two firms can litigate as cheaply as one.").  Further, a three-firm approach is not likely to be "conducive to a unified, coherent presentation of the [Class's] claims."  *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 817 (N.D. Ohio 1999).  This proposal, therefore, does not appear appropriately to protect the interests of the class.

Although it is rare for defendants to challenge a Lead Plaintiff's appointment motion, Defendants' decision to do so here was appropriate.  *See* Defs.' Mem. at 1; *King v. Livent*, 36 F. Supp. 2d 187, 190 (S.D.N.Y. 1999) (comparing cases with contrary holdings and concluding that "nothing in the text of the Reform Act precludes or limits the right of defendants to be heard on [the appointment of Lead Plaintiff and class counsel]").  Defendants are not "pick[ing] who gets to sue them."[6]  *See* Reply Mem. at 1.  Genius can — and has indicated that its three law firms will — pursue this lawsuit.  Genius is simply not an appropriate Lead Plaintiff for a Class.

---

[6]     Plaintiff's counsel picking exactly who gets to sue, via iterative Lead Plaintiff processes, as Genius now requests, would be equally problematic.

Although rare, courts do deny Lead Plaintiff appointment motions, where appropriate, even when only one candidate has applied. *See, e.g.*, *Bosch v. Credit Suisse Grp. AG*, No. 22-CV-2477 (ENV), 2022 WL 4285377, at *6 (E.D.N.Y. Sep. 12, 2022) (collecting cases); *Guo v. Tyson Foods, Inc.*, No. 21-CV-00552 (AMD) (JRC), 2022 WL 5041798, at *6 (E.D.N.Y. Sep. 30, 2022); *McCormack*, 2022 WL 17336586. That is the appropriate path forward here.

## III.    Next Steps

On May 15, 2026, the Court ordered (1) the parties to confer on next steps and (2) if unable to agree on a path forward, to file supplemental briefing on the question of next steps in the event the Court denied Genius's application to serve as Lead Plaintiff. Order, Dkt. 36. Genius still believes it is an appropriate Lead Plaintiff but, nonetheless, asks the Court to allow it to withdraw and to reopen the Lead Plaintiff application process. Genius's Letter, Dkt. 39 at 1. Genius proposes that the Court call for new notice and an abbreviated timeline of 30 days for new applications from Class members. *Id.*

Defendants, on the other hand, argue that the Court should not reopen the Lead Plaintiff process and that this suit should proceed on an individual basis. Defs.' Letter, Dkt. 38 at 1 (*citing Bosch*, 2022 WL 4285377, at *7; *Guo*, 2022 WL 5041798, at *6; *Chang v. Customers Bancorp, Inc.*, 2025 WL 1748357, at *5 (E.D. Pa. June 24, 2025)). Defendants point out that the PSLRA does not provide an explicit mechanism to reopen the Lead Plaintiff process. *Id.* at 2.

Defendants are correct that the PSLRA is silent on the proper procedure. *See Fort Worth Emps' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 326 (S.D.N.Y. 2012). Reopening the Lead Plaintiff process is not precluded by the PSLRA, and there is precedent to do so. The Court has discretion to manage the Lead Plaintiff process and indeed has exercised

11

that discretion in other cases.[7]  *See, e.g.*, *Christiansen v. Spectrum Pharmaceuticals*, No. 22-CV-10292 (VEC), 2025 WL 2234041 at *5 (S.D.N.Y. Aug. 4, 2025).  Nonetheless, as Defendants recognize, the facts surrounding re-opening the process in *Christiansen* were very different from the facts in this case.  There, a Lead Plaintiff was appointed after a contested process and served for more than two years before being disqualified for actions taken *after* he was appointed and after the bulk of discovery had been completed.  *Christiansen*, 2025 WL 2234041 at *2–4.  Only then was the Lead Plaintiff application process reopened.  *Id.*  In short, the circumstances in *Christiansen* were distinct, unique, and unforeseeable at the outset of the case.

The much more analogous case is *McCormack*, 2023 WL 3750162.  Genius distinguishes this case from *McCormack*, citing the "significant effort" made in *McCormack* to identify a Lead Plaintiff, "including amplification of published notice by numerous law firms."  Genius's Letter, Dkt. 39 at 3 (*citing McCormack*, 2023 WL 3750162 at *3).  Here, there is no evidence that initial efforts to identify a Lead Plaintiff were insignificant or, more importantly, insufficient.  Notice was published in *Business Wire* for the full 60-day period contemplated by the PSLRA at 15 U.S.C. § 78u4(a)(3)(A)(II).  *See Grant & Eisenhofer Files Class Action Lawsuit Against Citadel Securities LLC and Virtu Americas LLC*, BUSINESS WIRE (Nov. 17, 2025, at 12:52 PM ET), https://secure.businesswire.com/news/home/20251117989078/en/Grant-Eisenhofer-Files-Class-Action-Lawsuit-Against-Citadel-Securities-LLC-and-Virtu-Americas-LLC.  All putative Class members were given statutorily compliant notice of the opportunity to move for appointment as Lead Plaintiff.  The scope of the case and claims have not changed since, so there is not a crop of

---

[7]    Genius characterizes Defendants as asserting that the Court lacks authority to reopen the Lead Plaintiff application process.  Genius's Letter, Dkt. 39 at 1–2.  The Court does not read Defendants' letter as arguing that. *See* Defs.' Letter, Dkt. 38.  For avoidance of doubt, the Court, as indicated by its recent actions in *Christiansen*, 2025 WL 2234041, and other cases, can tap into its inherent authority to reopen the Lead Plaintiff process, given the PSLRA's silence on the topic.  Nonetheless, the Court chooses not to reopen the process here as it would be inappropriate under these factual circumstances for the reasons cited.

potential plaintiffs that the Court expects would come out of the woodwork now on their own volition. *See McCormack*, 2023 WL 3750162, at *3 ("[T]here have been no amendments to the complaint that have substantially altered the claims or class members.").

Genius asks the Court to assume "the absence of competing movants is not an unequivocal sign of investor disinterest." Genius's Letter, Dkt. 39 at 3. Genius represents that "numerous investors have since contacted Genius's counsel, expressed interest in the litigation, and reported losses during the Class Period." *Id.* at 2. While the Court assumes the truth of Genius's assertion, it does not change the outcome. The Court understands that, practically, it is "not uncommon for class members not to apply for lead plaintiff status where, as here, a party with greater losses has applied." *Coopersmith v. Lehman Bros., Inc.*, 344 F. Supp. 2d 783, 790 (D. Mass. 2004). Genius — or more likely Genius's counsel — may have hamstrung Genius by seeking its appointment as Lead Plaintiff if that tactical decision dissuaded other, more appropriate Lead Plaintiffs from coming forward. That said, it is hard to see how Genius is prejudiced by not being appointed as Lead Plaintiff. Its quantum of damages, if it succeeds, will be no less in a single Plaintiff case than in a class action.[8]

Finally, it would set a dangerous precedent to do what Genius suggests. What would stop every law firm from putting forth only its favored candidate — and doing its best to encourage an uncontested process — and, if that candidate is denied Lead Plaintiff status, starting the process fresh with its second favorite candidate? The Court cannot justify needlessly providing Genius's three law firms with multiple bites at this apple. It seems self-evident that a lawsuit filed by two law firms, with a Motion to appoint three law firms as Lead Counsel and no

---

[8]    The Court understands, however, that the economics may not be the same for the three law firms seeking to become Lead Counsel.

13

appropriate Lead Plaintiff, smacks of the sort of lawyer-driven litigation that the PSLRA aims to avoid.

## CONCLUSION

For the foregoing reasons, Genius's Motion is DENIED, and this action will proceed on an individual basis.  No later than **July 1, 2026**, Genius must file an Amended Complaint. Defendants will then have until **July 31, 2026**, to answer or move to dismiss the Amended Complaint.  If Defendants move to dismiss, Genius will have until **August 31, 2026**, to oppose, and Defendants will have until **September 15, 2026**, to reply.

The Clerk of Court is respectfully directed to close the open Motion at Dkt. 27 and remove the class language from the case caption.

**SO ORDERED.**

**Date:  June 18, 2026**
**        New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**

14